FILED
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

JAN 2 8 2014

MICHAEL S. RICHIE
CLERK

No. F-2013-200

IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

CHANNEN RAY OZELL SMITH,

Appellant,

-vs-

THE STATE OF OKLAHOMA,

Appellee.

RECEIVED

JAN 28 2014

ATTORNEY GENERAL

BRIEF OF APPELLEE
FROM TULSA COUNTY DISTRICT COURT
CASE NO. CF-2010-4461

E. SCOTT PRUITT
ATTORNEY GENERAL OF OKLAHOMA

ASHLEY L. WILLIS, OBA # 22210
ASSISTANT ATTORNEY GENERAL

313 NE 21st Street
Oklahoma City, Oklahoma 73105
(405) 521-3921
(405) 522-4534 (FAX)

ATTORNEYS FOR APPELLEE

JANUARY 28, 2014

EXHIBIT
1

## TABLE OF CONTENTS

PAGE

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PROPOSITION I

       THE TULSA COUNTY PUBLIC DEFENDER'S OFFICE'S
       REPRESENTATION OF DEFENDANT AND MR. SAVAGE
       DID NOT CONSTITUTE AN "ACTUAL CONFLICT OF
       INTEREST." DEFENDANT RECEIVED
       CONSTITUTIONALLY EFFECTIVE ASSISTANCE OF
       COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

PROPOSITION II

       DEFENDANT'S CONVICTIONS DO NOT VIOLATE
       OKLAHOMA'S STATUTE AGAINST DOUBLE
       PUNISHMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

PROPOSITION III

       THE IDENTIFICATION OF THE DEFENDANT AS THE
       PERPETRATOR OF THIS CRIME FALLS WITHIN THE
       EXCITED UTTERANCE EXCEPTION TO THE HEARSAY
       RULE AND WAS PROPERLY ADMITTED . . . . . . . . . . . . . . . . . . . . . . . . . 20

PROPOSITION IV

       INSTRUCTIONAL ERROR DID NOT OCCUR AS THE JURY
       WAS PROPERLY INSTRUCTED ON SEPARATE
       CONSIDERATION OF EACH OFFENSE. . . . . . . . . . . . . . . . . . . . . . . . . . . 26

PROPOSITION V

       THE STATEMENTS BY DETECTIVE REGALADO DURING
       THE VIDEOTAPED INTERVIEW WERE PROPER
       INTERROGATION TACTICS AND DID NOT REQUIRE
       REDACTION FROM THE VIDEOTAPE. THE TRIAL . . . . . . . . . . . . . . . 27

i

PROPOSITION VI

    THE TRIAL COURT DID NOT ERR IN FAILING TO INSTRUCT THE JURY ON JAILHOUSE INFORMANT TESTIMONY BECAUSE MR. SAVAGE WAS NOT A JAILHOUSE INFORMANT ........................ 33

PROPOSITION VII

    THE TRIAL COURT DID NOT COMMIT ERROR IN ALLOWING THE STATE'S REBUTTAL WITNESS TO TESTIFY ........................... 39

PROPOSITION VIII

    IT WAS NOT ERROR FOR THE TRIAL COURT TO ASSESS A FEE FOR THE COSTS OF DEFENDANT'S DEFENSE, AS THIS FEE IS AUTHORIZED BY OKLAHOMA LAW ................................... 41

PROPOSITION IX

    DEFENDANT RECEIVED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL ....................................................... 45

PROPOSITION X

    CUMULATIVE ERROR DID NOT OCCUR. THEREFORE, DEFENDANT WAS NOT DEPRIVED HIS RIGHT TO A FAIR TRIAL ................... 50

CONCLUSION ........................................................ 50

CERTIFICATE OF SERVICE ............................................. 51

## TABLE OF AUTHORITIES

### CASES

*Andrew v. State,*
    2007 OK CR 23, 164 P.3d 176 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35-38

*Baker v. State,*
    1996 OK CR 49, 927 P.2d 577 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bedford v. State,*
    765 So.2d 846 (Fla. Dist. Ct. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bernay v. State,*
    1999 OK CR 37, 989 P.2d 998 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

*Bland v. State,*
    2000 OK CR 11, 4 P.3d 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Blockburger v. United States,*
    284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932) . . . . . . . . . . . . . . . . . . . . . 19

*Bolin v. Wyoming,,*
    137 P.3d 136 (Wy. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Burleson v. Saffle,*
    2002 OK CR 15, 46 P.3d 150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cuyler v. Sullivan,*
    446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980) . . . . . . . . . . . . . . 6, 7, 11, 47

*Darks v. State,*
    1998 OK CR 15, 954 P.2d 152 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Davis v. State,*
    1999 OK CR 48, 993 P.2d 124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Davis v. State,*
    2005 OK CR 21, 123 P.3d 243 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Day v. State,*
    2013 OK CR 8, 303 P.3d 291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Dodd v. State,*
       2000 OK CR 2, 993 P.2d 778 .................................. 34, 37, 38, 49

*Ellis v. State,*
       1990 OK CR 43, 795 P.2d 107 ....................................... 7

*Faulkner v. State,*
       2011 OK CR 23, 260 P.3d 430 ...................................... 9

*Fiorot v. State,*
       1982 OK CR 27, 641 P.2d 551 .................................. 39-41

*Frederick v. State,*
       2001 OK CR 34, 37 P.3d 908 ................................... 48, 49

*Hanson v. State,*
       2009 OK CR 13, 206 P.3d 1020 .................................. 45

*Harrington v. Richter,*
       562 U.S. __, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) ......................... 46

*Hawkins v. State,*
       1988 OK CR 207, 761 P.2d 918 ................................ 23, 24, 26

*Hogan v. State,*
       2006 OK CR 19, 139 P.3d 907 ............................... 28, 33, 34, 42

*Holloway v. Arkansas,*
       435 U.S. 475, 98 S. Ct. 1173, 55 L.Ed. 2d 426 (1975) ........................... 13

*Hubbard v. State,*
       2002 OK CR 8, 45 P.3d 96 .................................... 42, 45

*Jackson v. Denno,*
       378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964) ........................... 28

*Jackson v. State,*
       2007 OK CR 24, 163 P.3d 569 ................................... 28

*Jones v. State,*
       2011 OK CR 13, 253 P.3d 997 ................................... 50

*Littlejohn v. State,*
 2008 OK CR 12, 181 P.3d 736 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Livingston v. State,*
 1995 OK CR 68, 907 P.2d 1088 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Logsdon v. State,*
 2010 OK CR 7, 231 P.3d 1156 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Malone v. State,*
 2013 OK CR 1, 293 P.3d 198 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 47

*Mason v. State,*
 1988 OK CR 113, 756 P.2d 612 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*McDade v. State,*
 1988 OK CR 62, 752 P.2d 827 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 41

*McDaniel v. State,*
 1973 OK CR 222, 509 P.2d 675 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mickens v. Taylor,*
 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002) . . . . . . . . . . . . . . . . . . . . . . 13

*Mitchell v. State,*
 2011 OK CR 26, 270 P.3d 160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28, 31, 38

*Nesbitt v. State,*
 2011 OK CR 19, 255 P.3d 435 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 44, 45

*People v. Hernandez,*
 896 N.E.2d 297 (Ill. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Perry v. State,*
 1988 OK CR 252, 764 P.2d 892 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13, 14, 47

*Pinkerton v. Alabama,*
 395 So.2d 1080 (Ala. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rogers v. State,*
 1995 OK CR 8, 890 P.2d 959 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

v

*Ryder v. State,*
    2004 OK CR 2, 83 P.3d 856 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Idaho v. Severson,*
    215 P.3d 414 (Idaho 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Smith v. State,*
    2007 OK CR 16, 157 P.3d 1155 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Montana v. St. Dennis,*
    244 P.3d 292,  137 P.3d 136 (Mont. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*State v. Delso,*
    2013 OK CR 5, 298 P.3d 1192 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Stemple v. State,*
    2000 OK CR 4, 994 P.2d 61 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Strickland v. Washington,*
    466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) . . . . . . . . . . . . . . . . . . *passim*

*Taylor v. State,*
    2011 OK CR 8, 248 P.3d 362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 25

*Thompson v. State,*
    1975 OK CR 204, 541 P.2d 1328 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*United States v. Calabria,*
    614 F.Supp. 187 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wald v. State,*
    1973 OK CR 343, 513 P.2d 330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Webster v. State,*
    2011 OK CR 14, 252 P.3d 259 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Wilkey v. State,*
    1998 OK CR 11, 953 P.2d 347 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wood v. Georgia,*
    450 U.S. 261, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981) . . . . . . . . . . . . . . . . . . 6, 13

*Wright v. State*,
   2001 OK CR 19, 30 P.3d 1148 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 37, 38

## STATUTES

12 O.S. § 2615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

12 O.S.2011, § 2801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

12 O.S.2011, § 2802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

12 O.S.Supp. 2004, § 2803 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

19 O.S.2011, § 138.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42-44

20 O.S.Supp.1993, § 55. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43

21 O.S.2001, § 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18, 19

21 O.S.Supp.2007, § 652 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 O.S.Supp.2009, § 701.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 O.S.Supp.2009, § 1283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 O.S.2001, § 1289.17A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17, 19

22 O.S.2011, § 1355.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43- 45

## RULES

*Rule 1.14, Rules of the Oklahoma Court of Criminal Appeals,*
   Title 22, Ch. 18, App. (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Rule 3.11(C), Rules of the Oklahoma Court of Criminal Appeals,*
   Title 22, Ch. 18, App. (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rule 8.1 et. seq., Rules of the Oklahoma Court of Criminal Appeals,*
   Title 22, Ch. 18, App. (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Rule 1.7, Oklahoma Rules of Professional Conduct,*
   Title 5, Ch. 1, App. 3-A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rule 1.7(a)(2), Oklahoma Rules of Professional Conduct,*
    Title 5, Ch. 1, App. 3-A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rule 1.9, Oklahoma Rules of Professional Conduct,*
    Title 5, Ch. 1, App. 3-A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rule 1.11, Oklahoma Rules of Professional Conduct,*
    Title 5, Ch. 1, App. 3-A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rule 1.10, Oklahoma Rules of Professional Conduct,*
    Title 5, Ch. 1, App. 3-A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# IN THE COURT OF CRIMINAL APPEALS FOR THE STATE OF OKLAHOMA

CHANNEN RAY OZELL SMITH,    )
                                  )
           **Appellant,**        )
v.                           )     **Case No. F-2013-200**
**THE STATE OF OKLAHOMA**     )
                                   )
           **Appellee.**        )

## BRIEF OF APPELLEE

## STATEMENT OF THE CASE

Channen Ray Ozell Smith, hereinafter referred to as defendant, was tried by jury for the crimes of First Degree Murder, in violation of 21 O.S.Supp.2009, § 701.7 (Count I), Shooting with Intent to Kill, in violation of 21 O.S.Supp.2007, § 652(A) (Count II), Possession of a Firearm After Former Conviction of a Felony, in violation of 21 O.S.Supp.2009, § 1283 (Count III), and Discharging a Weapon into a Dwelling or Public Place, in violation of 21 O.S.2001, § 1289.17A (Count IV), in Tulsa County District Court, Case No. CF-2010-4461, before the Honorable Kurt G. Glassco, District Judge (O.R. I 69-72).[1] Defendant was represented by counsel. The jury found defendant guilty of First Degree Murder (Count I), Shooting with Intent to Kill (Count II), Possession of a Firearm After Former Conviction of a Felony (Count III), and Discharging a Weapon into a Dwelling or Public Place (Count IV) (O.R. II 278, 281, 283, 285; Tr. IV 131-132, 174). The jury recommended the following sentences:

> Count I: First Degree Murder: Life imprisonment;
> Count II: Shooting with Intent to Kill: twenty (20) years imprisonment;

---

[1] Citations to the original record will be referred to as (O.R. I), (O.R. II) and (O.R. III). The transcript on defendant's Motion to Dismiss held on August 30, 2011, will be referred to as (8/30/11 Motion Hearing Tr.). The transcript of the hearing on defendant's Motion for Continuance will be referred to as (8/31/12 Motion Hearing Tr.). The transcript of the jury trial held on January 7-11, 2013, will be referred to as (Tr. I), (Tr. II), (Tr. III), and (Tr. IV). The transcript of the sentencing hearing held on February 15, 2013, will be referred to as (S. Tr.).

Count III: Possession of a Firearm After Former Conviction of a Felony: ten (10) years imprisonment;

Count IV: Discharging a Weapon into a Dwelling or Public Place: ten (10) years imprisonment.

(O.R. II 279-280, 282, 284; Tr. IV 149, 198-199). The trial court sentenced defendant according to the recommendations of the jury ordering the sentences in Counts II, III, and IV to run concurrently with each other and consecutive to the sentence in Count I. The trial court granted defendant credit for time served and imposed a two-thousand dollar ($2,000) fee for the costs of his defense (O.R. II 380-383, 384-386, 387-389, 390-391; S. Tr. 12-13). From these Judgements and Sentences, defendant perfected his appeal to this Court.

## STATEMENT OF THE FACTS

In October 2010, Carlameisha Jefferson lived with Brandon Savage, Dominique Jasper, Lovely, Eisha, Gabrielle, LeKyle, and five children at 1843 North Harvard in Tulsa, Oklahoma (Tr. II 77, 79, 186).[2] Ms. Jefferson, Mr. Savage, and Mr. Jasper were all part of the 107 Hoover Crips gang. Ms. Jefferson's street name was "24K". Mr. Savage's street name was "Ghost Face". Mr. Jasper's street name was "D Loc" (Tr. II 78, 144, 193, 269).

In the late evening hours of October 22, 2010, Ms. Jefferson, Mr. Jasper and Mr. Savage drove to the Comanche Park Apartments at 36th Street and Peoria so Ms. Jefferson could see her god-children and so Mr. Savage could speak with a woman about selling drugs (Tr. II 81-82, 188). When they arrived at the Comanche Park Apartment complex, Ms. Jefferson parked next to a Sports Utility Vehicle (SUV) with four men inside. Mr. Jasper told the individuals in the SUV they had marijuana for sale. One of the individuals inquired about the marijuana and voiced his concern that the

---

[2] The children living in the residence will not be named for the protection of their identity. Appellee will refer to some individuals by first name because their last names were not given during the jury trial.

2

marijuana could contain the drug K2. Mr. Savage "smarted off" to the man in the SUV and told him marijuana and K2 were not easy to get mixed up (Tr. II 190-191).

Ms. Jefferson, Mr. Savage, and Mr. Jasper went to Ms. Jefferson's friend's apartment to see her god-children and when they left, the four men from the SUV were sitting under a tree. One of the men in the group started "making statements" to Ms. Jefferson, Mr. Savage, and Mr. Jasper. Mr. Savage identified himself as "Ghost Face" from the 107 Hoover Crips, and told them to come talk to him. At that point one of the four men punched Mr. Savage in the face (Tr. II 190, 192). Mr. Savage was not hurt and told the men to "meet him in the parking lot." The men went to the parking lot and Mr. Savage and Mr. Jasper begin fighting with the four men (Tr. II 85-86, 192-193). Ms. Jefferson went to an apartment to get help, but no one answered the door. As she walked back to the parking lot, Ms. Jefferson saw Freddie Smith, an individual she knew from the apartment complex, walking between two cars. Mr. Smith attempted to hit her, but he missed (Tr. II 86-87). Ms. Jefferson walked to the vehicle she drove to the apartment complex and yelled for Mr. Savage and Mr. Jasper to get in the car (Tr. II 87, 193).

As Ms. Jefferson waited for Mr. Savage and Mr. Jasper to get into the car, she saw Freddie Smith fire two gunshots into the air (Tr. II 87). As Ms. Jefferson, Mr. Savage, and Mr. Jasper attempted to leave the parking lot, another vehicle drove up and hit the passenger door of the vehicle she was driving (Tr. II 89; State's Exhibit 10).[3]

Shortly after Ms. Jefferson, Mr. Jasper, and Mr. Savage arrived back home, Ms. Jefferson

---

[3] Mr. Savage and Ms. Jefferson testified differently regarding the parking lot fight. Mr. Savage testified the individual fired two shots into the ground. According to Mr. Savage, Ms. Jefferson attempted to run over the individual who fired the gun. Mr. Savage testified the damage to the car occurred when Ms. Jefferson hit a fire hydrant (Tr. II 194).

3

got back in the car and drove to the apartment complex to check on her god-children (Tr. II 93). On the way to the apartment complex, Ms. Jefferson was pulled over and arrested on an outstanding warrant and possession of a firearm (Tr. II 95; 198-199).[4] The next morning, October 23, 2010, Ms. Jefferson bonded out of jail and returned home to 1843 N. Harvard (Tr. II 95, 199). Ms. Jefferson, Mr. Jasper, and Mr. Savage went to the liquor store that evening and purchased two bottles of liquor. That night, Ms. Jefferson, Mr. Savage, and Mr. Jasper played drinking games with the other adults at the house (Tr. II 97, 201-203).

Mr. Savage and Mr. Jasper went outside after playing the drinking games. While they were outside, defendant arrived at the house and as he walked up the driveway, he introduced himself to Mr. Savage as "Cross." Defendant and Mr. Jasper hugged and Mr. Jasper referred to defendant as his "day one," meaning he had known him a long time (Tr. II 205-206). Defendant told Mr. Jasper he was upset and asked him why he was "kicking it with this snitching-ass bitch." Mr. Jasper told defendant he did not have any verification Ms. Jefferson was a snitch because she was not on any one's "paperwork"(Tr. II 207, 208-209).[5]

Ms. Jefferson heard defendant talking so she went outside to see him (Tr. II 98). Defendant accused her of being "high" (Tr. II 209). Ms. Jefferson informed defendant she did not "snitch" on "Two Piece" and "Big Mark" and she was not on their "paperwork." Defendant did not believe her and said "the hood knows you're hot" (Tr. II 209-210). Ms. Jefferson confronted defendant saying the reason he was mad was because she took his girlfriend, Sabrina Schrader, from him (Tr. II 104,

---

[4] Although Ms. Jefferson testified she did not know the gun was in the vehicle, Mr. Savage testified Ms. Jefferson retrieved the gun from a shoe box and took it with her when she left the residence (Tr. II 199).

[5] "Paperwork" refers to court documents or documents from a lawyer confirming "you informed on someone."

4

210).  When Ms. Jefferson said this, defendant became confrontational and called Ms. Jefferson a "bitch" (Tr. II 211).  Ms. Jefferson became angry and went inside the house, leaving Mr. Savage and Mr. Jasper outside with defendant.

An individual in an SUV across the street, who Mr. Savage recognized as Freddie Smith, got out of the car and told defendant to "come on" (Tr. II 212).  Defendant calmed down and told Mr. Jasper to ask Ms. Jefferson to come back outside so they could "squash the whole thing" before he left (Tr. II 213-214).  After some convincing from Mr. Jasper and Mr. Savage, Ms. Jefferson agreed to go back outside to talk to defendant (Tr. II 112, 214).  Ms. Jefferson walked out onto the porch of the house and held her hand out to shake defendant's hand.  Instead of shaking her hand, defendant started cussing at Ms. Jefferson (Tr. II 114).  Before turning to walk back into the house, Ms. Jefferson stated, "I told y'all he wasn't going to be mature enough to want to squash this.  It's supposed to have already been squashed." (Tr. II 117).

As Ms. Jefferson turned to walk back inside the house, defendant pulled a gun out of his waistband and started shooting towards the house (Tr. II 118, 215-216, 229).  Mr. Jasper, who was standing by defendant, asked him what he was doing.  Defendant turned and pointed the gun at Mr. Jasper as Mr. Jasper ran away.  Defendant fired three to five shots and when the gun clicked empty, he ran to the SUV across the street (Tr. II 216-217, 229).

Mr. Jasper and Ms. Jefferson were taken to St. John Hospital where both received treatment for the gun shot wounds.  Ms. Jefferson had two gunshot wounds, one on her left arm and one under the left arm near her ribs (Tr. II 119; State's Exhibits 45, 47).  Mr. Jasper had gunshot wounds to his left wrist, the back of his head, his lower back, and a graze wound to his right shoulder.  The gunshot wound to the back of Mr. Jasper's head was superficial and only penetrated the skin and soft tissue

5

(Tr. III 63). The gunshot to Mr. Jasper's lower back struck the third lumber vertebra, injured his bowel and lodged in his abdomen (Tr. III 65). On November 15, 2010, Mr. Jasper died from complications resulting from multiple gunshot wounds (Tr. III 53, 58, 68).

After the shooting, Mr. Savage told everyone inside the house to tell the police they did not know who shot Mr. Jasper and Ms. Jefferson because he intended to "take care of the situation himself" and kill defendant (Tr. II 222-223, 225). However, after meeting Mr. Jasper's mother, Mr. Savage changed his story and told police the truth about the shooting (Tr. II 266). Defendant was arrested on November 17, 2010 (Tr. III 9). Additional facts may be presented hereafter as they relate to defendant's propositions of error.

## PROPOSITION I

**THE TULSA COUNTY PUBLIC DEFENDER'S OFFICE'S REPRESENTATION OF DEFENDANT AND MR. SAVAGE DID NOT CONSTITUTE AN "ACTUAL CONFLICT OF INTEREST." DEFENDANT RECEIVED CONSTITUTIONALLY EFFECTIVE ASSISTANCE OF COUNSEL.**

In his first proposition of error, defendant claims the Tulsa County Public Defender's Office's representation of Mr. Savage, a witness for the State, created a conflict of interest. Defendant has not and cannot show an actual conflict of interest adversely affected his lawyer's performance. Accordingly, defendant received effective assistance of counsel.

A defendant's Sixth Amendment right to effective assistance of counsel encompasses the "correlative right to representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271, 101 S. Ct. 1097, 1103, 67 L. Ed. 2d 220 (1981). A defendant who fails to raise an objection to counsel's assistance based on a conflict of interest "must demonstrate that an actual conflict of interest adversely affected his lawyers performance." *Cuyler v. Sullivan*, 446 U.S. 335,

356, 100 S. Ct. 1708, 1722, 64 L. Ed. 2d 333 (1980).

This Court adopted the reasoning in *Cuyler*, and holds "[a]n actual conflict of interest exists where the interests of an attorney and a defendant diverge with respect to a material factual or legal issue **or to a course of action**." *Livingston v. State*, 1995 OK CR 68, ¶ 11, 907 P.2d 1088, 1091-1092 (emphasis in original); *see also Perry v. State*, 1988 OK CR 252, ¶ 10, 764 P.2d 892, 896 (same). "Not until Appellant shows that his counsel 'actively represented conflicting interests' has he established the constitutional predicate for his ineffective assistance claim." *Perry*, 1988 OK CR 252, ¶ 10, 764 P.2d at 896. The mere possibility of a conflict is not enough to establish this type of Sixth Amendment violation. *Ellis v. State*, 1990 OK CR 43, ¶ 11, 795 P.2d 107, 110 (citing *Cuyler*, 446 U.S. at 350, 100 S. Ct. at 1719). Defendant has not and cannot demonstrate his public defenders labored under any actual conflict of interest that adversely impaired their performance at his trial. Defendant's arguments have no merit and should be denied.

In support of his argument, defendant relies upon evidence not admitted at trial and therefore, not in the record on appeal. Defendant filed a Motion to Remand for Evidentiary Hearing and attached certified copies of the docket sheets in Tulsa County, Case Numbers CF-2012-4864 and CF-2012-5017 (Motion for Evidentiary Hearing). The defendant in Case Numbers CF-2012-4864 and CF-2012-5017, is Brandon Savage, the eyewitness to the shooting and a witness for the State during defendant's jury trial. Defendant alleges the certified copies of the docket sheet prove the Tulsa County Public Defender's office represented him and Mr. Savage during the pendency of this case. The information tendered to this Court in the motion is not before the Court at this time and therefore, cannot be considered in support of this proposition. Rule 3.11(C), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2011) As it now stands, the record is only that

7

which was presented to the trial court. The record demonstrates there is no actual conflict of interest and defense counsel's representation of defendant was not affected by another public defender's representation of Mr. Savage during the pendency of this case. Accordingly defendant's Motion to Remand for Evidentiary Hearing should be denied.

Relying on the docket sheets from Mr. Savage's cases, defendant argues "there can be little doubt that a conflict of interest existed when the Tulsa County Public Defender's Office represented both defendant and Brandon Savage while this case was pending." Appellant's Brief, p. 11. Defendant admits different lawyers represented him and Mr. Savage, but claims under Rule 1.10, *Oklahoma Rules of Professional Conduct*, Title 5, Ch. 1, App. 3-A, any lawyer with the Tulsa Public Defender's Office was automatically disqualified from representing both individuals at the same time. Rule 1.10, prohibits members of the same law firm from representing a future client when any one member of the firm would be prohibited from doing so under Rules 1.7 and 1.9. *See* Rule, 1.10, *Oklahoma Rules of Professional Conduct*, Title 5, Ch. 1, App. 3-A. Rule 1.9 is inapplicable to this case because there is no allegation by defendant that the Tulsa County Public Defender's Office represented him and Mr. Savage in the "same or substantially related matter." *See* Rule 1.9, *Oklahoma Rules of Professional Conduct*, Title 5, Ch. 1, App. 3-A. Defendant also relies on Rule 1.7, *Oklahoma Rules of Professional Conduct*, Title 5, Ch. 1, App. 3-A, which prohibits representation of an individual when "the representation of one client will be directly adverse to another client." Rule 1.7 is inapplicable to the present case because there is no evidence representation of Mr. Savage was directly adverse to defendant.

Defendant's position is inconsistent with this Court's resolution of similar issues, as well as other jurisdictions who have confronted questions surrounding the disqualification of entire criminal

8

justice entities. In *Wilkey v. State,* 1998 OK CR 11, ¶ 2, 953 P.2d 347, 348, this Court confronted the question of whether the entire district attorney's office should be disqualified from prosecuting the case because two assistant district attorneys represented the Appellant during the first murder trial, but now worked for the district attorney's office. This Court found no justification for imputing the conflict of the two attorneys to the entire office as there was no evidence either attorney participated in the case or had contact with the prosecutors in the second trial. *Id.* 1998 OK CR 11, ¶ 2, 953 P.2d at 348-349.

In *Baker v. State*, 1996 OK CR 49, ¶ 11, 927 P.2d 577, 581, this Court reversed the district court's revocation order because prosecutors who had minimally worked to revoke the appellant's suspended sentence previously represented him in related proceedings. Analyzing the issue of disqualification under Rule 1.11, *Oklahoma Rules of Professional Conduct,* Title 5, Ch. 1, App. 3-A, this Court noted their possession of relevant privileged information gained from their former client. *Id.* 1996 OK CR 49, ¶¶7- 11, 927 P.2d at 580-581. Significantly, however, the court did not find or direct on remand, that the entire district attorney's office was precluded from seeking the revocation of the appellant's suspended sentence.

Similarly, in *Faulkner v. State*, 2011 OK CR 23, ¶ 9, 260 P.3d 430, 432-433, this Court reversed a conviction where an assistant district attorney, who previously represented the Appellant in a civil matter based upon the same transaction, was involved in the prosecution of the Appellant for sexual abuse. Because the assistant district attorney's interests were materially adverse to his former client's interests, this Court held the assistant district attorney should have been disqualified from any involvement in the case. *Id.* However, this Court made no finding that the assistant district attorney's disqualification would extend to the entire office.

9

Although issues involving a public defender's office and a district attorney's offices are not always equivalent, the question of whether a duty of loyalty owed to a former and current client by a single attorney automatically taints the entire office can be viewed in the same way. District Attorney and Public Defender offices are not like regular law firms that can select those whom they must prosecute or defend. Other courts have recognized the uniqueness of public defender offices compared to a typical law firm when conflicts like the one alleged in this case emerge. These courts have decided against imposing a *per se* rule of mass disqualification in favor of a case-by-case analysis into whether an actual conflict existed involving the representing lawyer and, if so, whether counsels' performance was adversely affected thereby. *See e.g., Montana v. St. Dennis*, 244 P.3d 292, 297-298 (Mont. 2010) (citing *Bolin v. Wyoming*, 137 P.3d 136, 145 (Wy. 2006) (rejecting *per se* disqualification of entire office where there is a conflict with one attorney, and requiring instead a case-by-case inquiry into actual conflict and adverse effect caused by the conflict;)); *Idaho v. Severson*, 215 P.3d 414, 426 (Idaho 2009) ("[A]utomatically disqualifying a public defender where another attorney in the office has a conflict of interest would significantly hamper the ability to provide legal representation of indigent clients." The Idaho Court also rejected a *per se* rule imputing conflicts of interest to "affiliated public defenders when there is no indication the conflict would hamper an attorney's ability to effectively represent a client.").

The State contends this case-by-case approach adequately protects a defendant's constitutional right to conflict-free counsel while recognizing the unique nature of the public defense system and the attorneys who work with such a gigantic, ever-moving, and often intermingling clientele. Moreover, it strikes an appropriate balance between securing a defendant's right to effective representation and the public's interest in protecting judgments from attack in the absence

10

of an actual conflict of interest that adversely affected counsel's representative performance. Finally, searching for actual conflicts and resulting prejudice rather than the mere possibility of such is in keeping with the architecture of *Cuyler*, is consistent with this Court's jurisprudence involving conflicts within District Attorney and Public Defender offices. Defendant should be required to demonstrate an actual conflict of interest that adversely affected his attorney's performance. As shown below, defendant can established neither and thus, no constitutional violation occurred.

In this case, defendant was charged with murder in the first degree, shooting with intent to kill, and possession of a firearm after former conviction of a felony on November 16, 2010 (O.R. I 1, 28-29).[6] Defendant was represented by private counsel until August 30, 2011 (O.R. I 8). The Tulsa County Public Defender's Office was appointed to represent defendant on September 26, 2011 (O.R. 8). Marny Hill with the Tulsa County Public Defender's Office represented defendant from the time of appointment until sometime after December 19, 2011 (O.R. I 8-11, 94-99, 100-103, 119, 130-131). Thereafter, Lora Smart with the Tulsa County Public Defender's Office represented defendant until April 26, 2012 (O.R. I 11-13; 2/6/2012 Allen Hearing Tr. 2). After Ms. Smart left defendant's case, Glen Dresbeck and Dustin Allen with the Tulsa County Public Defender's Office represented defendant until the conclusion of the jury trial (O.R. I 14-22, 185-188; O.R. II 213-217, 255-256, 269-271). Defendant concedes in his brief, and the record proves, the pending charges against Mr. Savage were not associated with the facts of this case (Tr. II 173, 230, 239).

This Court faced a similar claim in *Jaumon Monell Okyere v. State*, Case No. F-2006-1055

---

[6] Defendant was not charged with discharging a firearm into a dwelling or public place until May 27, 2011 (O.R. I 69-72).

11

(Dec. 17, 2007) (unpublished and attached as Exhibit A),[7] wherein the Appellant claimed the Tulsa County Public Defender's Office's representation of him and his co-defendant created a conflict of interest. In *Okyere*, the co-defendant was represented by the public defender at the preliminary hearing and the Appellant was represented by private counsel. *Id.* Case No. F-2006-1055, slip op. at 4. After the preliminary hearing, the appellant's private counsel withdrew from the case and the co-defendant retained private counsel. *Id.* The Tulsa County Public Defender's Office was appointed to represent the Appellant over the public defender's objection based on an office policy against such representation. *Id.* Case No. F-2006-1055, slip op. at 6-7. This Court rejected the appellant's claim the representation of the co-defendant by a different public defender precluded representation by another public defender in the same office, stating:

> We cannot conclude either that an actual conflict of interest adversely affected Appellant's lawyer's performance, that an actual, relevant conflict existed during the proceedings, or that there was a substantial possibility that a conflict of interest affected Appellant's lawyer's representation. Appellant's counsel at trial prosecuted the defense with competence and vigor. Appellant' was not denied his constitutional right to effective assistance of counsel.

*Id.* Case No. F-2006-1055, slip op. at 8.

Like *Okeyere*, defendant fails to show how the representation of him and Mr. Savage created any type of "directly adverse" situation. In fact, defendant fails to allege a single instance where his attorneys failed to act on his behalf because they were "materially impaired" by an alleged conflict of interest, nor has he shown a "significant risk" of it happening at his trial. *See* Rule 1.7(a)(2), *Oklahoma Rules of Professional Conduct*, Title 5, Ch. 1, App. 3-A. On the contrary, Mr. Dresback

---

[7] This opinion is cited pursuant to Rule 3.5(C)(3) of this Court, and is offered for consideration as no published opinion would serve as well. A copy of this unpublished opinion is attached to this brief pursuant to Rule 3.5(C)(3) of this Court.

and Mr. Allen vigorously cross-examined Mr. Savage's version of events, his prior record, his affiliation with the 107 Hoover Crips, his plan to retaliate against defendant and kill him before police found him, and impeached his credibility by focusing on his lies to police (Tr. II 239-282). Additionally, Mr. Dresback and Mr. Allen presented witnesses on defendant's behalf, impeached the credibility of the State's witnesses, and presented a well prepared alibi defense. Defendant cannot prove the alleged conflict of interest adversely affected his lawyer's performance.

The cases cited by defendant in support of his claim can be distinguished on their facts. Most of the cases deal with the same attorney representing both a defendant and his co-defendants or the defendant and the victim. *See Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002) (the lead trial attorney in the appellant's case represented the homicide victim at the time the Appellant killed the victim); United *States v. Calabria*, 614 F.Supp. 187 (E.D. Pa. 1985) (representation by a lawyer who had personally represented both the defendant and several former-client prosecution witnesses); *Wood,* 450 U.S. at 266-274, 101 S.Ct. at 1100-1105 (single attorney was paid by the employer to represent three co-defendants in one case. The Court held the employer and the defendants had different interests and remanded the case to determine if a conflict of interests existed.); *Holloway v. Arkansas*, 435 U.S. 475, 477-481, 98 S. Ct. 1173, 1175-1177, 55 L.Ed. 2d 426 (1975) (defense counsel represented three co-defendants in the same case and demonstrated an inability to cross-examine any of them without sacrificing the interests of the others.). These cases are inapplicable to the present case as there is no evidence Mr. Dresback or Mr. Allen were involved in Mr. Savage's cases or that counsel was actively representing conflicting interests. *See Perry*, 1988 OK CR 252, ¶ 10, 764 P.2d at 896 ("Not until Appellant shows that his counsel 'actively represented conflicting interests' has he established the constitutional predicate for his ineffective assistance

13

claim.").

Defendant cites two cases wherein the same attorney represented a defendant during trial and previously represented a witness for the State. *See Bedford v. State*, 765 So.2d 846 (Fla. Dist. Ct. App. 2000) (a single lawyer represented the defendant in a case wherein the victim was a former client); *Pinkerton v. Alabama*, 395 So.2d 1080 (Ala. 1980) (a single lawyer represented the defendant and had previously represented at least one of the drug informants whose activities led directly to defendants' arrest). In *People v. Hernandez*, 896 N.E.2d 297, 309 (Ill. 2008), the Supreme Court of Illinois found a *per se* conflict of interest occurred because the appellant's attorney represented the victim, who was a witness for the State. The victim's arrest, which led to the defense attorney's representation of the victim, arose from the victim's kidnapping of the Appellant and returning him to the victim's home to threaten the appellant's family. *Id.* 896 N.E.2d at 307. The facts in *Hernandez* are easily distinguished in this case. First, there is no evidence Mr. Dresback or Mr. Allen represented Mr. Savage. Second, the facts surrounding the pending cases against Mr. Savage were unrelated to the present case. Accordingly, *Hernandez* is inapplicable to the facts of this case.

Defendant has failed to demonstrate either of his attorneys actively represented conflicting interests in this case that caused their representation of him to be adversely affected. Accordingly, defendant was not denied the effective assistance of counsel at trial. *See Perry*, 1988 OK CR 252, ¶ 10, 764 P.2d at 896 ("Not until Appellant shows that his counsel 'actively represented conflicting interests' has he established the constitutional predicate for his ineffective assistance claim."). This proposition of error has not merit and should be denied.

14

## PROPOSITION II

### DEFENDANT'S CONVICTIONS DO NOT VIOLATE OKLAHOMA'S STATUTE AGAINST DOUBLE PUNISHMENT.

In his second proposition of error, defendant claims his convictions for first degree murder, shooting with intent to kill and discharging a weapon into a dwelling or public place violate Oklahoma's statutory provision against double punishment found at 21 O.S.2001, § 11. Defendant's convictions do not violate double punishment.

Defendant filed a Motion to Dismiss on the basis of double punishment. This motion was denied by the trial court (O.R. 83-91; 8/30/2011 Motion Hearing Tr. 13). Defendant filed a Motion to Merge Count II and Count IV arguing the punishment of both charges violated Oklahoma's statutory provision against double punishment. The trial court denied the motion (O.R. 126-127). Accordingly, defendant preserved this error for appellate review.

Oklahoma law provides in pertinent part, "in no case can a criminal act or omission be punished under more than one section of law." 21 O.S.2001, § 11(A). In *Davis v. State,* 1999 OK CR 48, ¶ 13, 993 P.2d 124, 126-127, this Court held:

> The proper analysis of a claim raised under Section 11 is then to focus on the relationship between the crimes. If the crimes truly arise out of one act as they did in *Hale*, then Section 11 prohibits prosecution for more than one crime. One act that violates two criminal provisions cannot be punished twice, absent specific legislative intent. This analysis does not bar the charging and conviction of separate crimes which may only tangentially relate to one or more crimes committed during a continuing course of conduct.

This Court holds, "Oklahoma's statutory ban on 'double punishment' is not violated when the offenses at issue are separate and distinct." *Littlejohn v. State*, 2008 OK CR 12, ¶ 16, 181 P.3d 736, 742. "Whether a particular course of conduct constitutes one or more crimes, depends heavily

15

on how the Legislature has defined the crimes sought to be prosecuted." *Id.* 2008 OK CR 12, ¶ 17, 181 P.3d at 742.

Regarding crimes against the person, this Court holds:

Crimes against the person are separate and distinct if they are directed at separate victims. "[I]t has long been part of our jurisprudence that, where crimes against the person are involved, even though various acts are part of the same transaction, they will constitute separate and distinct crimes where they are directed at separate and distinct persons.

*Burleson v. Saffle*, 2002 OK CR 15, ¶ 5, 46 P.3d 150, 152. "A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person." *Id.* 2002 OK CR 15, ¶ 6, 46 P.3d at 153.

Regarding crimes committed in rapid succession, this Court holds, "separate transactions will exist where the evidence of each is identical but each requires dissimilar proof. The fact that crimes are committed in rapid succession does not negate separate crimes as long as a separation does exist." *Rogers v. State*, 1995 OK CR 8, ¶ 27, 890 P.2d 959, 973, *see also McDaniel v. State*, 1973 OK CR 222, ¶ 14, 509 P.2d 675 (holding crimes committed in rapid succession does not negate the fact that separate crimes were committed and to find otherwise would allow individuals to "commit any number of crimes simultaneously, knowing they could only be punished for one.").

The elements of first degree murder are (1) the death of a human; (2) the death was unlawful; (3) the death was caused by the defendant; and (4) the death was caused with malice aforethought (O.R. II 325; Instruction No. 4-61, OUJI-CR (2d)). In the present case, the evidence proved Dominique Jasper asked defendant what he was doing when he fired shots towards Ms. Jefferson. Hearing Mr. Jasper's question, defendant turned and pointed the gun at Mr. Jasper (Tr. II216). As

16

Mr. Jasper ran from defendant, defendant fired four to five shots in Mr. Jasper's direction, hitting him three times (Tr. II 217, 255; Tr. III 63). On November 15, 2010, Mr. Jasper died from complications associated with the gunshot wounds (Tr. III 7, 57-58).

The elements of the crime of shooting with intent to kill are: (1) intentional and wrongful; (2) shooting another person with a firearm; (3) with the intent to kill any person (O.R. II 332; Instruction No. 4-4, OUJI-CR (2d)). In the present case, the evidence proved defendant was angry with Ms. Jefferson and accused her of being a "snitch" (Tr. II 207, 209-210). Ms. Jefferson denied these accusations and when she attempted to "squash" the conflict with defendant, he continued cussing at her (Tr. II 114, 215). As Ms. Jefferson turned to walk back inside Mr. Savage's house, defendant "looked left, looked right, and pulled a gun out of his waistband" and fired seven to nine shots at the house hitting Ms. Jefferson (Tr. II 117-118, 215, 255). Ms. Jefferson sustained injuries to her left arm and the rib area under the left arm (Tr. II 119; State's Exhibits 45, 47).

The elements of the crime of discharging a weapon into a dwelling or public place are: (1) willfully and intentionally; (2) discharge any firearm or other deadly weapon; (3) at or into any dwelling, or into any building used for public or business purposes (O.R. II 335; 21 O.S. § 1289.17A). The evidence in the present case proved defendant fired between seven and nine shots at Mr. Savage's house as Ms. Jefferson walked inside (Tr. II 117-118, 215-216, 255). The evidence proved the door to the house was open when the shots were fired allowing one of the bullets to lodge itself inside a wall in the living room (Tr. II 59; State's Exhibit 15, 22-23, 40-41). At the time defendant fired the shots into Mr. Savage's house, three adults and six children were inside the house (Tr. II 202).

The crimes in the present case do not violate Oklahoma's statutory provision against double

17

punishment. First, the crimes of first degree murder and shooting with intent to kill are considered crimes against the person, which are considered separate and distinct crimes when there is more than one victim. Even though these crimes were part of the same shooting, there were two victims, Mr. Jasper and Ms. Jefferson. Accordingly defendant's convictions of first degree murder and shooting with intent to kill do not violate Oklahoma's statutory provision against double punishment.

Next, the crimes of shooting with intent to kill and discharging a firearm into a dwelling or public place are separate and distinct crimes. As stated, the crime of shooting with intent to kill is a crime against the person. Whereas, the crime of discharging a firearm into a dwelling or public place is a crime against property. The crime of shooting with intent to kill was created to protect individuals who are shot but who do not die as a result of the gunshots. The crime of discharging a firearm into a dwelling or public place was created to protect the property individuals or business owners. The Legislature's intent to protect persons and property through the charging of separate crimes is evident in the statutes for the crime of shooting with intent to kill and discharging a firearm into a dwelling or public place. Despite the fact that the crimes occurred in rapid succession, they are separate and distinct crimes. Defendant's act of shooting Ms. Jefferson and into Mr. Savage's house are separate and distinct crimes. Defendant's conviction for the crimes of shooting with intent to kill and discharging a firearm into a dwelling does not violate Oklahoma's statutory provision against double punishment. Defendant did not receive multiple punishments in violation of 21 O.S.2011, § 11. Defendant's claim is without merit.

Defendant does not argue his convictions for first degree murder, shooting with intent to kill, and discharging a weapon into a dwelling or public place violate the double jeopardy clause of the United States and Oklahoma Constitutions. However, as shown below, there is no double jeopardy

18

violation.

In *Logsdon v. State*, 2010 OK CR 7, ¶ 19, 231 P.3d 1156, 1165, this Court held, "because Section 11 compliments double jeopardy protections of Oklahoma and United States Constitutions, traditional double jeopardy analysis is conducted only if Section 11 does not apply." In *Blockburger v. United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932), the United States Supreme Court held, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." This Court uses the test set forth in *Blockburger* to evaluate constitutional claims of double jeopardy. *Logsdon*, 2010 OK CR 7, ¶ 19, 231 P.3d at 1165.

The elements of first degree murder are (1) the death of a human; (2) the death was unlawful; (3) the death was caused by the defendant; and (4) the death was caused with malice aforethought (O.R. II 325; Instruction No. 4-61, OUJI-CR (2d)).

The elements of the crime of shooting with intent to kill are: (1) intentional and wrongful; (2) shooting another person with a firearm; (3) with the intent to kill any person (O.R. II 332; Instruction No. 4-4, OUJI-CR (2d)).

The elements of the crime of discharging a weapon into a dwelling or public place are: (1) willfully and intentionally; (2) discharge any firearm or other deadly weapon; (3) at or into any dwelling, or into any building used for public or business purposes (O.R. II 335; 21 O.S. § 1289.17A).

First degree murder requires the death of a human at the hands of defendant. Neither shooting with intent to kill nor discharging a firearm required the death of a human. Additionally,

shooting with intent to kill requires an intentional and wrongful shooting of another person. Neither first degree murder nor discharging a firearm into a dwelling or public place require the shooting of another person. Finally, discharging a firearm into a dwelling or public place requires the discharge of a firearm into a dwelling or public place. Neither shooting with intent to kill nor first degree murder require the discharging of a fire arm into a dwelling or public place. As plainly shown, these crimes require proof of an additional element the other does not. Defendant's convictions for the crimes of first degree murder, shooting with intent to kill, and discharging of a firearm into a dwelling or public place do not violate the double jeopardy provisions of the United States or Oklahoma Constitutions.

In conclusion, defendants convictions for the crimes of first degree murder, shooting with intent to kill, and discharging of a firearm into a dwelling or public place do not violate Oklahoma's provision against multiple punishments as the crimes are separate crimes which only tangentially relate to one another. Furthermore, defendant's convictions do not violate the United States or the Oklahoma Constitutions' prohibition against double jeopardy as the crimes required proof of an additional fact or element the other does not. Defendant's arguments are without merit and this proposition should be denied.

## PROPOSITION III

**THE IDENTIFICATION OF THE DEFENDANT AS THE PERPETRATOR OF THIS CRIME FALLS WITHIN THE EXCITED UTTERANCE EXCEPTION TO THE HEARSAY RULE AND WAS PROPERLY ADMITTED.**

In his third proposition of error, defendant contends inadmissable hearsay deprived him of a fair trial. Specifically, defendant argues the statement made by Mr. Jasper to his mother wherein

he identified defendant as the shooter was not an excited utterance and therefore, constituted inadmissible hearsay. Contrary to defendant's argument, Mr. Jasper's statement was admissible under the excited utterance exception to the hearsay rule. Defendant's argument is without merit.

"The admission or exclusion of evidence over a timely objection or offer of proof is ordinarily discretionary and will not be reversed on appeal unless clearly erroneous or manifestly unreasonable." *Taylor v. State*, 2011 OK CR 8, ¶ 20, 248 P.3d 362, 370. An abuse of discretion is any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue." *State v. Delso*, 2013 OK CR 5, ¶ 5, 298 P.3d 1192, 1192. "An abuse of discretion has also been described as 'a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented.'" *Id.*

Oklahoma law defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." 12 O.S.2011, § 2801. "Hearsay is not admissible except as otherwise provided by an act of the Legislature." 12 O.S.2011, § 2802. "'A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the startling event or condition' is not excluded by the hearsay rule regardless of the availability of the declarant." *Taylor*, 2011 OK CR 8, ¶ 20, 248 P.3d at 370 (citing 12 O.S.Supp. 2004, § 2803(2)). In order for a statement to fall within the excited utterance exception to the hearsay rule, the statement must meet three requirements: "(1) a startling event or condition; (2) a statement relating to that startling event or condition; (3) made while the declarant is under the stress of excitement caused by the startling event or condition." *Id.* 2011 OK CR 8, ¶ 21, 248 P.3d at 370.

Excited utterances are excepted from the rule against hearsay because "the

21

spontaneity of the statement[s] in relation to the exciting event gives rise to trustworthiness," . . . and their "nearness to the stimulating event excluded the possibility of premeditation and fabrication." . . . In determining the application of the excited utterance exception, "[t]he critical question . . . is whether the statements by the declarant were spoken under the extreme stress of a startling even so that there was no time to fabricate." As we recently stated in *Hancock*, the requirement that the hearsay statement be made while under the stress of a startling event is "particularly important; there must be no time for reflection or fabrication."

*Id.* 2011 OK CR 8, ¶ 21, 248 P.3d at 370-371 (internal citations omitted).

The admissibility of hearsay statements under the excited utterance exception "depends not upon a fixed time, but on the facts and circumstances" surrounding the statement. *Id.* 2011 OK CR 8, ¶ 30, 248 P.3d at 373. Mr. Jasper's statement to his mother was properly admitted under the excited utterance exception to the hearsay rule as it was made after defendant shot him, it related to the shooting, and it was made while he was still under the stress of the shooting.

In the present case, Phyllis Jasper, Dominique Jasper's mother, testified she received a call relating to the shooting of Mr. Jasper at approximately 2:30 a.m., on October 23, 2010 (Tr. III 81-82). Ms. Jasper arrived at St. John Hospital within one hour of receiving the telephone call (Tr. III 83). When she arrived in the room, Mr. Jasper was laying down on the bed and was being attended to by the nurses (Tr. III 84-85). At the time Ms. Jasper was in Mr. Jasper's hospital room, he was moving around, "was very destroyed from the gunshot, from being shot," was "very, very emotional," and was upset (Tr. III 86-87). During direct examination, the prosecutor asked: "[d]id it appear to you, as him being your son, that he was still upset or under the stress of being shot that night?" (Tr. III 88). Ms. Jasper responded, "[y]es." (Tr. III 88). Defendant objected and argued the question called for speculation and was leading. The trial court overruled defendant's objections (Tr. III 88-89).

22

Direct examination of Ms. Jasper continued as follows:

THE PROSECUTOR: Now. Ms. Jasper, how much time had passed between the time you got the call that your son had been shot, to your witnessing your son under all of this stress?

MS. JASPER: It was within an hour. . .

THE PROSECUTOR: While your son was under – was upset, okay, without telling me what he said, did he say anything? That's a yes or no question.

MS. JASPER: Yes.

THE PROSECUTOR: And were you there to hear what he said?

MS. JASPER: Yes.

THE PROSECUTOR: And were you able to observe all of his physical reactions, his emotions and his demeanor when he said whatever he said?

MS. JASPER: Yes.

THE PROSECUTOR: What did he say?

(Tr. III 89).

Defendant objected to the question and the trial court overruled the objection holding the

State laid a foundation for excited utterance (Tr. III 90). Ms. Jasper stated:

MS. JASPER: He said – I asked him, "Who did it?" He said, "Cross."

THE PROSECUTOR: What did he say?

MS. JASPER: He said, "Momma, Cross shot me. Momma, Cross shot me. Momma, Cross shot me."

(Tr. III 90).

A similar argument was made in *Hawkins v. State*, 1988 OK CR 207, ¶ 4, 761 P.2d 918, 919,

wherein the Appellant argued the victim's statement identifying him as the shooter was inadmissible.

23

After the Appellant shot the victim in *Hawkins*, the victim went to the door of a nearby apartment and told the occupant to call the police. Within ten minutes of the 9-1-1 call, the officer arrived and asked the victim who shot him. The victim identified the shooter as the Appellant. *Id.* This Court held the victim's statement satisfied the three requirements for admissibility and held the statement was properly admitted as an excited utterance. *Id.* 1988 OK CR 207, ¶ 6, 761 P.2d at 920.

The statement in the present case, made by Mr. Jasper in response to his mother's question of "who did this," is similar to the statement made by the victim in *Hawkins*. Like *Hawkins*, the shooting constituted a startling event. Second, Mr. Jasper's statement related to the startling event, i.e., the shooting. Third, the statement was made while Mr. Jasper was "destroyed by the gunshot, from being shot," was "very very emotional," and was upset (Tr. III 86-87). Finally, Mr. Jasper's statement was made within one hour of Ms. Jasper receiving the telephone call that her son was shot (Tr. III 83, 89). As Mr. Jasper's statement to his mother fell within the three requirements of the excited utterance exception to the hearsay rule, it was not an abuse of discretion for the trial court to admit Mr. Jasper's statement as an excited utterance. Defendant's argument is without merit.

In support of his argument that Mr. Jasper's statement should not have been admitted, defendant argues the prosecutor asked a leading question during direct examination of Ms. Jasper in order to lay the foundation required for the excited utterance exception. Defendant claims without this leading question, Ms. Jasper would not have testified Mr. Jasper was upset or under stress. Appellant's Brief, p. 26. Contrary to defendant's assertions Ms. Jasper had already testified to Mr. Jasper's emotional state and informed the jury Mr. Jasper was "destroyed by the gunshot, from being shot," was "very very emotional," and was "upset" (Tr. III 86, 87). Regardless of the prosecutor's alleged leading question, the foundation for the excited utterance exception was laid when Ms.

24

Jasper testified to Mr. Jasper's demeanor and emotional state. The trial court did not abuse its discretion in overruling defendant's objection to the prosecutor's question. Defendant's argument is without merit and should be denied.

Defendant also argues the statement lacked spontaneity because it was made after the initial statement to Sergeant Bayles wherein Mr. Jasper stated he did not know the shooter. Defendant claims Mr. Jasper was still under the stress of the shooting at the time he made the statement to Sergeant Bayles, but was not under the stress or excitement at the time he spoke to his mother. Appellant's Brief, p. 28. Sergeant Bayles testified Mr. Jasper informed him he did not know the shooter and described him as a black male, approximately six-three, wearing a hoodie (Tr. III 195). Sergeant Bayles testified Mr. Jasper was in pain and went "in and out of consciousness" during their conversation (Tr. III 194). On cross-examination, Sergeant Bayles admitted gang members, even victims, were not often cooperative (Tr. III 201-203).

Contrary to defendant's argument, it was not merely the fact that Mr. Jasper was in pain or uncomfortable that proved he was still under the stress of the shooting but the fact that he was "destroyed by the gunshot, from being shot," was "very very emotional," and was "upset" at the time he spoke to Ms. Jasper (Tr. III 86, 87, 88). Accordingly, Mr. Jasper was still under the stress and excitement of the shooting at the time he identified defendant as the shooter. The fact that Mr. Jasper's statement was made in response to his mother's question is inconsequential as the statement fell within the three requirements of the excited utterance exception to the hearsay rule. *Taylor,* 2011 OK CR 8, ¶ 21, 248 P.3d at 370 (setting forth the requirements of the excited utterance exception). Defendant's arguments are without merit and should be denied.

As Mr. Jasper's statement was made after a startling event, related to the startling event, i.e.,

the shooting, and was made while he was still under the stress of the event, the statement was properly admitted under the excited utterance exception to the hearsay rule. Accordingly, it was not an abuse of discretion for the trial court to admit Mr. Jasper's statement as an excited utterance. *Hawkins*, 1988 OK CR 207, ¶ 6, 761 P.2d at 920. This proposition should be denied.

## PROPOSITION IV

### INSTRUCTIONAL ERROR DID NOT OCCUR AS THE JURY WAS PROPERLY INSTRUCTED ON SEPARATE CONSIDERATION OF EACH OFFENSE.

In his fourth proposition of error defendant contends the trial court committed instructional error in failing to instruct the jury it was to consider each offense separately. The record belies defendant's contention. The jury was properly instructed on separate consideration of each offense and thus, instructional error did not occur.

This Court will not find error when the jury instructions, read in their entirety, fairly and accurately state the applicable law. *See Mitchell v. State*, 2011 OK CR 26, ¶ 51, 270 P.3d 160, 176 (holding there was no error when the instructions fairly and accurately stated the applicable law and properly narrowed the jury's discretion to use notes during trial).

The record in the present case proves the jury was instructed to give separate consideration to each offense (O.R. II 324). At the conclusion of the State's *voir dire* of the potential jury panel, the trial court stated:

> The State having completed their *voir dire* examination, before I allow the Defendant, I meant to read an instruction earlier and I'd like to read it now. . .

> Ladies and gentlemen, you must give separate consideration for each charge in the case. The Defendant is entitled to have his case decided on the basis of the evidence and law which is applicable to each charge. The fact that you return a verdict of guilty or not guilty for one charge should not in any way affect your verdict

26

for any other charge.

(Tr. I 178).

In *Smith v. State*, 2007 OK CR 16, ¶ 38, 157 P.3d 1155, 1168-1169, this Court recognized that the jury was specifically instructed to give separate consideration to each offense. Based on that fact, this Court could not find error occurred as a result of the joinder of the two murders. *Id.* Like *Smith*, the jury in the present case was specifically instructed to give separate consideration to each offense and instructional error did not occur (O.R. II 324; Tr. I 178).

As the jury instructions in the present case, when read in their entirety, fairly and accurately state the applicable law and specifically instruct the jury to give separate consideration to each offense, there is no error. Defendant's proposition is without merit and should be denied.

## PROPOSITION V

### THE STATEMENTS BY DETECTIVE REGALADO DURING THE VIDEOTAPED INTERVIEW WERE PROPER INTERROGATION TACTICS AND DID NOT REQUIRE REDACTION FROM THE VIDEOTAPE. THE TRIAL COURT'S FAILURE TO REDACT THE STATEMENTS WAS NOT ERROR.

In his fifth proposition of error defendant contends the trial court erred in admitting the videotape of his interview without redacting Detective Vick Regalado's personal opinions. Defendant also claims the trial court erred in failing to give a limiting instruction to the jury regarding the proper use of the detective's statements. Detective Regalado's statements constituted proper interrogation tactics and were properly admitted. Additionally, the jury was instructed on the proper use of the evidence. Error did not occur.

Defense counsel objected to the admission of the videotaped interview, but did not request redaction of specific statements made by Detective Regalado. Appellant's Brief, p. 31. This Court

27

holds:

> In many instances, the inadmissible portions of videotapes can be redacted before the videotape is viewed by the jury. *See Darks v. State*, 1998 OK CR 15, ¶ 15, 954 P.2d 152, 158. However, it is incumbent upon trial counsel to make specific objections to specific content of the videotapes and request that the objectionable content be redacted. *See Stemple v. State*, 2000 OK CR 4, ¶ 33, 994 P.2d 61, 69.

*Jackson v. State*, 2007 OK CR 24, ¶ 14, 163 P.3d 569, 601. As defense counsel failed request the redaction of specific statements made by Detective Regalado, this Court should review defendant's claim for plain error only. In *Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923, this Court held:

> To be entitled to relief under the plain error doctrine, [defendant] must prove: 1) the existence of an actual error (i.e., deviation of a legal rule); 2) that the error is plain or obvious; and 3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding.

As the videotaped interrogation was properly admitted and the jury was properly instructed on the use of the videotaped interrogation plain error did not occur. *See Mitchell*, 2011 OK CR 26, ¶ 124, 270 P.3d at 187 ("It is well established that juries are presumed to follow their instructions.").

Immediately prior to defendant's jury trial, a *Jackson v. Denno*[8] hearing was held to determine the voluntariness of defendant's statements to Detective Regalado and whether the video taped interview was admissible. During the hearing, the prosecutor informed the trial court the video was redacted to remove statements by defendant regarding his prior confinement in the Department of Corrections (Tr. I 99-100). The trial court viewed the interrogation video and determined the statements were voluntarily made (Tr. II 176).

During the interrogation interview, Detective Regalado questioned defendant about his whereabouts on October 22 and 23, 2010, and his involvement in the shooting that injured Ms.

---

[8] *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964).

28

Jefferson and killed Mr. Jasper (State's Exhibit 1). Detective Regalado informed defendant he was picked out of a photo line-up and identified as the shooter by the victims and witnesses (State's Exhibit 1, 14:47). Defendant denied being at the scene and claimed he was either at his dad's house or with his girlfriend and her brother in Claremore (State's Exhibit 1, 14:45-14:46). Detective Regalado told defendant he "begged to differ" with his story. Detective Regalado reminded defendant he was identified by the victims and witnesses and told him there were cameras up and down Harvard Avenue that would show he was at Mr. Savage's house. Detective Regalado told defendant he was not there to cast judgment, but to investigate the facts. Detective Regalado admitted people "point fingers," but said he was there to get defendant's side of the story, whether that be self-defense or another reason (State's Exhibit 1, 14:48-14:51). Defendant continued to deny he was at Mr. Savage's house and claimed he did not know anyone by the name of Dominque Jasper or Carlameisha Jefferson. Defendant said he knew people only by their nicknames (State's Exhibit 1, 14:51-14:52). Based on this statement, Detective Regalado left the interview room and retrieved pictures of Mr. Jasper and Ms. Jefferson (State's Exhibit 1, 14:52).

When Detective Regalado returned to the interview room defendant identified Mr. Jasper as "D Loc" and Ms. Jefferson as "24K" (State's Exhibit 1, 14:59). Defendant claimed Mr. Jasper lived at the Comanche Apartments. Defendant said Ms. Jefferson did not like him because he took her girlfriend and he refuses to hang out with her because she's "a snitch" and he did not want his life jeopardized (State's Exhibit 1, 15:00-15:01). Detective Regalado again told defendant he did not believe his story and claimed if it was just Ms. Jefferson who identified him as the shooter, he would be hesitant to believe her because of her past. However, he believed defendant was there because Mr. Jasper and other witnesses identified him as the shooter. Detective Regalado said camera

29

images from the Dollar General store showed defendant was at Mr. Savage's house at the time of the shooting (State's Exhibit 1, 15:01-15:02). Defendant maintained his innocence and claimed he was not at Mr. Savage's residence at the time of the shooting and did not know why people were identifying him as the shooter (State's Exhibit 1, 15:03).

Detective Regalado told defendant the judge would not have signed the arrest warrant based only on Ms. Jefferson's statements, but because Mr. Jasper and other witnesses identified him, the judge signed the warrant (State's Exhibit 1, 15:04, 15:06-15:07). Detective Regalado reiterated his belief that defendant was involved and reminded him there was a difference between self-defense, manslaughter, first degree murder, and justifiable homicide (State's Exhibit 1, 15:04-15:05). Defendant again maintained his innocence and Detective Regalado told him if he was not there then he needed to give him information to prove his whereabouts. Defendant claimed he was in Claremore with Sabrina Schrader, her brother Mickey, and Mickey's wife but he did not know their phone numbers or exact address. Defendant stated Ms. Schrader's brother and his wife lived in Crestview Estates in Claremore, Oklahoma (State's Exhibit 1, 15:07-15:09, 15:10-15:12). Based on defendant's inability to provide any further information on his whereabouts, Detective Regalado concluded the interview and told defendant he was going to jail for first degree murder (State's Exhibit 1, 15:15).

Prior to closing arguments, the jury was instructed on the proper use of the video taped interview between defendant and Detective Regalado. The jury was instructed that it was their job to determine whether defendant's statement was voluntary. The instruction also informed the jury that if it did not determine defendant's statements to Detective Regalado were voluntary, it was to disregard the statement in its entirety (O.R. II 299; Instruction No. 9-12, OUJI-CR (2d)). The jury

was further instructed that even if it found defendant's statement was made freely and voluntarily, the statement alone did not justify a conviction (O.R. II 228). The jury was instructed on the use of an exculpatory statement made by the defendant which, if true, would entitle the defendant to an acquittal (O.R. II 301; Instruction No. 9-15, OUJI-CR (2d)).

The jury was also instructed on the proper use of opinion evidence (O.R. II 233; Instruction No. 9-42, OUJI-CR (2d)). The instruction informed the jury it was their job to give the testimony of expert witnesses the weight and value it thought the testimony should have (O.R. II 312; Instruction No. 9-42, OUJI-CR (2d)). The instructions defined evidence as "the testimony received from the witnesses under oath, stipulations made by the attorneys, and the exhibits admitted into evidence during the trial." (O.R. II 292; Instruction No. 10-5, OUJI-CR (2d)). The jury was also instructed on the definitions of direct evidence, circumstantial evidence and the weight to be given to both direct and circumstantial evidence (O.R. II 295-297; Instruction Nos. 9-2, 9-3, 9-4 OUJI-CR (2d). The jury instructions provided the proper safeguards for the jury's use of this evidence under Oklahoma law. *See Mitchell*, 2011 OK CR 26, ¶ 124, 270 P.3d at 187 ("It is well established that juries are presumed to follow their instructions.").

The statements made by Detective Regalado during the interview proved conversations occurred between Detective Regalado and other witnesses and were made to elicit responses from defendant. These statements were simply interrogation techniques used by Detective Regalado. In *Bernay v. State*, 1999 OK CR 37, ¶ 30, 989 P.2d 998, 1009, this Court approved of interrogation techniques stating:

> Police use different techniques in interrogation. A juror should know that interrogation is not testimony but is trying to illicit facts or get a party to make certain statements. The mere fact a detective during interrogation makes statements does not

> cause a reasonable juror to consider those as vouching for the credibility of a party.
> It is, quite frankly, a way to obtain a confession or try to obtain the truth as to what
> did in fact occur.

This Court held that the interrogation techniques in *Bernay* were not misleading and did not deprive

the Appellant of a fair trial. *Id.*

On cross-examination Detective Regalado admitted he told defendant he thought he

committed the crime (Tr. III 31). Detective Regalado admitted he used certain tactics to get

defendant to tell the truth and move the interrogation forward (Tr. III 32-33). Detective Regalado

admitted there was no camera footage from the Dollar General store and said telling defendant about

the camera was an interrogation tactic (Tr. III 34-35). As Detective Regalado's statements were

merely interrogation techniques, the jury instructions regarding the types of evidence to be

considered, the weight of the evidence, and opinion evidence properly limited the jury's

consideration of Detective Regalado's statements. As the proper precautions were put into place

regarding the admission and the use of this evidence during trial, any further limiting instructions

were not required.

This Court rejected a similar claim in *Webster v. State*, 2011 OK CR 14, ¶ 63, 252 P.3d 259,

276, wherein the Appellant claimed the interview should have been redacted to remove "the repeated

speculation and objectionable commentary by Detectives Burke and Eastridge." This Court

reviewed the appellant's claim for plain error because the claim was not preserved in the trial court.

*Id.* The interview was probative of the appellant's involvement and consciousness of guilt, as were

his repeated denials of being anywhere near the scene of the crime. *Id.* 2011 OK CR 14, ¶ 63, 252

P.3d at 277. This Court held the jury was unlikely to be influenced by the negative characterizations

and accusatory statements because the jury had seen the same tactics used in the interview of another

individual associated with the crime. *Id.* 2011 OK CR 14, ¶ 64, 252 P.3d at 277. This Court upheld the admission of the videotaped interview. *Id.*

Like *Webster*, the trial court did not err in admitting the videotaped interview of defendant by Detective Regalado. The interview was probative of defendant's involvement in the shooting, as were his repeated denials of being elsewhere at the time of the shooting and his inability to provide information to corroborate his alibi (State's Exhibit 1). Additionally, the jury was informed Detective Regalado's statements regarding his disbelief of defendant's story and his assurance that defendant was at the scene were merely interrogation tactics he used to try to get defendant to tell the truth (Tr. III 31-35).

The statements by Detective Regalado were proper interrogation tactics approved by this Court, did not reference evidence the jury did not have access to, and were properly admitted. Accordingly, the admission of the videotaped interview was not error. Accordingly, there is no plain error. *Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923 (To be entitled to relief under the plain error doctrine, defendant must prove the existence of actual error.). This proposition should be denied.

## PROPOSITION VI

### THE TRIAL COURT DID NOT ERR IN FAILING TO INSTRUCT THE JURY ON JAILHOUSE INFORMANT TESTIMONY BECAUSE MR. SAVAGE WAS NOT A JAILHOUSE INFORMANT.

In his sixth proposition of error defendant contends the trial court erred in failing to instruct the jury on the proper use of jailhouse informant testimony, Instruction No. 9-43A OUJI-CR (2d). As Mr. Savage was not a jailhouse informant, it was not error for the trial court to fail to instruct the jury on the use of jailhouse informant testimony. Defendant's argument is without merit.

Defendant concedes counsel did not request a jury instruction on the proper use of jailhouse

33

informant testimony. Appellant's Brief, p. 34. Defendant's claim of error is waived for all but plain

error review. *Day v. State*, 2013 OK CR 8, ¶ 17, 303 P.3d 291, 298 (the appellant's failure to request

the instruction at trial resulted in review for plain error only). In *Hogan*, 2006 OK CR 19, ¶ 38, 139

P.3d at 923, this Court held a defendant must prove (1) the existence of an actual error; (2) that the

error is plain or obvious; and (3) that the error affected his substantial rights.

Recognizing jailhouse informants relay incriminating statements to the State expecting a

benefit in return for the information, this Court, in *Dodd v. State*, 2000 OK CR 2, ¶ 25, 993 P.2d

778, 784, set forth a procedure for trial court's to follow to ensure defense counsel would be prepared

to cross-examine an informant witness. This procedure requires the State to:

> (1) disclose the complete criminal history of the informant;
>
> (2) any deal, promise, inducement, or benefit that the offering party has made or may make *in the future* to the informant (emphasis added);
> (3) the specific statements made by the defendant and the time, place, and manner of their disclosure;
>
> (4) all other cases in which the informant testified or offered statements against an individual but was not called, whether the statements were admitted in the case, and whether the informant received any deal, promise, inducement, or benefit in exchange for or subsequent to that testimony or statement;
>
> (5) whether at any time the informant recanted that testimony or statement, and if so, a transcript or copy of such recantation;
>
> (6) any other information relevant to the informant's credibility.

*Id.* This Court held Instruction No. 9-43, OUJI-CR (2d) should be given in all cases wherein a court

admits jailhouse informant testimony. *Id.* 2000 OK CR 2, ¶ 26, 993 P.2d at 784.

In subsequent cases, this Court explained the procedure in *Dodd* "sought to deal with the

'professional jailhouse informant,' i.e., an informant who repeatedly testified on behalf of the State

against fellow inmates in order to obtain lenience." *Wright v. State*, 2001 OK CR 19, ¶ 21, 30 P.3d 1148, 1152; *see also Andrew v. State*, 2007 OK CR 23, ¶ 114, 164 P.3d 176, 200 ("The instruction is to be given when a witness is a 'professional jailhouse informant.'"). Mr. Savage was not a professional jailhouse informant, but was an eyewitness to the shooting committed by defendant who happened to be in jail at the time of trial. The trial court did not err in failing to *sua sponte* instruct the jury on jailhouse informant testimony. Defendant's argument is without merit.

On January 9, 2013, the State filed a Notice of Supplemental Discovery and Request for Additional Endorsement stating Mr. Savage and defendant were placed in the same holding cell on January 7, 2013. While in the holding cell, defendant asked Mr. Savage what he was going to say on the witness stand and then informed Mr. Savage what he did was wrong and "it was nothing personal" (O.R. II 273). The trial court held the statements made by defendant in the holding cell were "statements against interest" and were admissible (Tr. II 177).

On direct examination, Mr. Savage testified he was currently charged with possession of a firearm, robbery and rape by instrumentation. Mr. Savage admitted he was not given any deals to testify and was told the prosecutor "would not have anything to do with that case" (Tr. II 230). On January 7, 2013, Mr. Savage and defendant were placed in the same holding cell (Tr. II 230-231). When the deputies placed Mr. Savage into the holding cell he saw defendant and gave defendant a hug, sat down, and talked to him (Tr. II 232-233).

> MR. SAVAGE: We had talked about the case. He was, like – he said, "Bro, I want to know what you gonna (sic) do." And so I said, "Man–" he said – I said, "I talked with some of the guys," and I said, "I'm not – I'm not going to testify against you. I'm going to get up there and I'm going to give a different type of statement." And so he was, like, "All right." He said, "All you got to say is this." So I'm, like, "All right. I know." So he had been talking about getting his life right with God. I been (sic) talking about getting my life right with God. We were talking about that. It

35

came time for us to leave. I said, "Man, you know they (sic) probably not going to put us back together again," and so that was it. We gave each other another hug, he left and I left.

PROSECUTOR: All right. Did you all ever talk about the incident that happened on October 23, 2010?

MR. SAVAGE: Yes. . . .

PROSECUTOR: What did you talk about in regard to the shooting at your house?

MR. SAVAGE: I told him, I said, "Man, look," I said, " I know it was nothing personal." I said, "You wasn't shooting at me." I said, "You were shooting at them."

PROSECUTOR: What did he say?

MR. SAVAGE: He was, like, "Yeah, man." He said, "You know when we out there under Satan's influence, we don't think a lot of times." And I said, "Yeah, man, you (sic) right." And that was it.

PROSECUTOR: Mr. Savage, why did you tell him that you weren't going to testify against him?

MR. SAVAGE: Because up until that particular time I was having a hard time trying to do it myself.

(Tr. II 233-235).

In *Andrew*, the Appellant argued the trial court erred in failing to give the cautionary instruction on jailhouse informant testimony. *Andrew*, 2007 OK CR 23, ¶ 113, 164 P.3d at 200. The witness, in *Andrew*, was an inmate in the Oklahoma County Jail at the time the Appellant confided in her. *Id.* The witness testified the Appellant told her "she and Pavatt killed Rob Andrew for the money, house, kids, and each other." *Id.* This Court held the jailhouse informant instruction "is to be given when a witness is a 'professional jailhouse informant.'" *Id.* 2007 OK CR 23, ¶ 114, 164 P.3d at 200. This Court evaluated the witness and held:

Sullivan was in federal custody while in the county jail. She was not facing any State

36

charges, and she testified that she did not expect any benefit from testifying. She did not seek out authorities with which to share her story. She, as well as others incarcerated in the county jail with Appellant, were contacted to determine whether they had information relevant to this case. The possibility that Sullivant was a jailhouse informant was not supported by the evidence presented to the trial court. The trial court did not err in failing to give this instruction.

*Id.*

In the present case, like *Andrew*, Mr. Savage was not a "jailhouse informant". First, Mr. Savage was an eye witness to the shooting of Mr. Jasper and Ms. Jefferson. Mr. Savage was a witness listed on the State's witness and exhibit list from the beginning of the discovery in this case (O.R. I 29, 64-66; O.R. II 206-207). Regardless of the information defendant provided to Mr. Savage on January 7, 2013, Mr. Savage would have testified to the events prior to and after the shooting. Furthermore, the fact that Mr. Savage was in jail on unrelated charges at the time he testified against defendant and received additional incriminating evidence against him, does not make him a jailhouse informant within the context of *Dodd*. *See Wright,* 2001 OK CR 19, ¶ 21, 30 P.3d at 1152 (the "fact [that] Poorboy was in jail on unrelated charges at the time he gave his statement to police does not make him a jailhouse informant within the *Dodd* context.").

Second, Mr. Savage testified he was not given any deal in exchange for his testimony against defendant (Tr. II 230). More importantly, Mr. Savage did not seek out defendant to get this information so he could use it for his own benefit. In fact, it was not until sometime after the conversation with defendant that Mr. Savage decided to tell the truth about the shooting and testify against defendant. Mr. Savage only testified against defendant because he realized if he wanted to move on with his life, he "can't try to move forward and still keep holding on to things that I used to do. So I can't try to get right and still try to live by the code of the streets. And so that's why I

37

have to make this testimony right here." (Tr. II 235). Mr. Savage further testified he knew it was possible something could happen to him for testifying and he recognized he is "not immortal" or "invincible." (Tr. III 275).

The record proves Mr. Savage was not a professional jailhouse snitch. He did not repeatedly testify on the State's behalf, he did not "prey" on defendant with the intent to elicit incriminating statements for his own benefit, and he did not receive a deal in exchange for the testimony he gave. Accordingly, Mr. Savage was not a jailhouse informant within the context of *Dodd*. *See Wright*, 2001 OK CR 19, ¶ 21, 30 P.3d at 1152 ( holding the professional jailhouse informant is "an informant who repeatedly testified on behalf of the State against fellow inmates in order to obtain lenience."). Accordingly, as Mr. Savage was not a jailhouse informant, the trial court did not err in failing to instruct the jury on the proper use of jailhouse informant testimony. *See Andrew*, 2007 OK CR 23, ¶ 114, 164 P.3d at 200 ("The instruction is to be given when a witness is a 'professional jailhouse informant.'"). Finally, the jury was instructed it was their job to determine the credibility of the witnesses and the weight to give the testimony (O.R. II 337). *See Mitchell*, 2011 OK CR 26, ¶ 124, 270 P.3d at 187 ("It is well established that juries are presumed to follow their instructions.").

Mr. Savage was an eyewitness who received additional incriminating evidence while in jail, not a "professional jailhouse informant" within the context of *Dodd*. Accordingly, the instruction on the proper evaluation of jailhouse informant testimony in inapplicable to this case. The trial court did not err in failing to instruct the jury on jailhouse informant testimony. Therefore, as there is no actual error, plain error did not occur. Defendant's arguments are without merit and this proposition should be denied.

## PROPOSITION VII

### THE TRIAL COURT DID NOT COMMIT ERROR IN ALLOWING THE STATE'S REBUTTAL WITNESS TO TESTIFY.

In his seventh proposition of error defendant contends the trial court erred in ruling the State's rebuttal witness was excluded from the rule of sequestration. The rule of sequestration is inapplicable to rebuttal witnesses. It was not error for the trial court to allow the State's rebuttal witness to testify. Defendant's argument is without merit.

In 1978, the Oklahoma legislature codified the rule of sequestration by enacting 12 O.S. § 2615. Section 2615 states in pertinent part, "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." 12 O.S.2011, § 2615. This Court holds rebuttal witnesses are excluded from the rule of sequestration. *See Mason v. State*, 1988 OK CR 113, ¶ 5, 756 P.2d 612, 613 ("The rule of sequestration of witnesses has been held in numerous criminal cases . . . as inapplicable to rebuttal witnesses."); *Fiorot v. State*, 1982 OK CR 27, ¶ 10, 641 P.2d 551, 554 ("It has repeatedly been held by this Court that the rule of sequestration does not apply to rebuttal witnesses, therefore, defendant's assertion in this matter is without merit."); *Thompson v. State*, 1975 OK CR 204, ¶ 33, 541 P.2d 1328, 1337 (holding it was not error for the rebuttal witness to remain in the courtroom as the witness did not fall within the rule of sequestration); *Wald v. State*, 1973 OK CR 343, ¶ 12, 513 P.2d 330, 333 (holding it was not error for the rebuttal witness to remain in the courtroom because the witness did not fall within the rule of sequestration). Decisions to grant exceptions to the rule of sequestration are solely within the sound discretion of the trial court. *McDade v. State*, 1988 OK CR 62, ¶ 10, 752 P.2d 827, 829.

In the present case, the State called Heather Prater, a victim-witness advocate for the Tulsa

39

County District Attorney's Office, as a rebuttal witness (Tr. IV 10-11). Defense counsel objected to Ms. Prater's testimony because she was present in the courtroom during the trial, which violated the rule of sequestration (Tr. IV 8). The State responded to defendant's objection stating, "Judge, obviously, she wasn't subject to the Rule because she wasn't a witness. She was made a witness by Ms. Schrader's testimony in court this week. I don't know that the Rule applies to her even still right now. She wasn't a named witness. She's rebuttal." (Tr. IV 9). The trial court agreed with the State's contention and overruled defendant's objection stating, "[i]f she wasn't a witness, I would agree. She wasn't a witness. And how would he know what witness he will need until you completed your case in chief?" (Tr. IV 9).

Ms. Prater testified she participated in the State's witness interviews of Sabrina Schrader (Tr. IV 12). During the meeting in November, Ms. Schrader informed the prosecutor defendant spent time with her at her residence and in Claremore. Ms. Schrader admitted she could not "recollect specifically" whether defendant was with her the weekend of the murder (Tr. IV 14). During the meeting on January 7, 2013, Ms. Schrader informed the prosecutor she could not remember whether defendant was with her the weekend of the murder (Tr. IV 14). Ms. Prater admitted hearing Ms. Schrader's trial testimony and testified Ms. Schrader's trial testimony was different than what she told them during the witness interviews (Tr. IV 15-16).

In *Fiorot*, the Appellant argued the trial court erred when it allowed a potential rebuttal witness to sit in the courtroom during the proceeding over defendant's objection and then allowed the witness to testify during rebuttal. *Fiorot*, 1982 OK CR 27, ¶ 10, 641 P.2d at 554. This Court rejected the appellant's argument stating, "[i]t has repeatedly been held by this Court that the rule of sequestration does not apply to rebuttal witnesses, therefore, defendant's assertion in this matter

40

is without merit." *Id.* Like *Fiorot*, Ms. Prater was present during the courtroom after the rule of sequestration was invoked and was permitted to testify on rebuttal (Tr. 9, 15-16). This was not error as Ms. Prater, a rebuttal witness, was excluded from the rule of sequestration. Accordingly, defendant's argument is without merit.

Defendant argues rebuttal witnesses are not automatically excluded from the rule of sequestration. Appellant's Brief, p. 39-40. As fully set forth above, this Court repeatedly holds the rule of sequestration is inapplicable to rebuttal witnesses. *Fiorot*, 1982 OK CR 27, ¶ 10, 641 P.2d at 554 ("It has repeatedly been held by this Court that the rule of sequestration does not apply to rebuttal witnesses, therefore, defendant's assertion in this matter is without merit."). As the rule of sequestration was inapplicable to Ms. Prater, a rebuttal witness, it was not an abuse of discretion for the trial court to permit Ms. Prater to testify during rebuttal. *McDade*, 1988 OK CR 62, ¶ 10, 752 P.2d at 829 (holding decisions to grant exceptions to the rule of sequestration are solely within the sound discretion of the trial court).

As the rule of sequestration is inapplicable to rebuttal witnesses, the trial court did not abuse its discretion in permitting Ms. Prater to testify during rebuttal. Defendant's argument is without merit and should be denied.

### PROPOSITION VIII

**IT WAS NOT ERROR FOR THE TRIAL COURT TO ASSESS A FEE FOR THE COSTS OF DEFENDANT'S DEFENSE, AS THIS FEE IS AUTHORIZED BY OKLAHOMA LAW.**

In his eighth proposition of error, defendant argues the two-thousand dollar ($2,000) fee assessed by the trial court for the costs of his defense was unauthorized by law and must be vacated. Contrary to defendant's claim, the imposition for the costs of his defense was proper under

41

Oklahoma law and was not excessive. Additionally, defendant's claim regarding his current ability to pay is premature and not properly before this Court. Defendant's claims are without merit and should be denied.

Defendant concedes he did not object to the imposition of the costs of his defense at the time of sentencing (S. Tr. 13). *See also* Appellant's Brief, p. 42. Therefore, this Court should review this claim for plain error only. *Hubbard v. State*, 2002 OK CR 8, ¶ 7, 45 P.3d 96, 99 (holding this Court will review for plain error only when the Appellant fails to object to the assessment of costs at the time of sentencing). In *Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923, this Court held a defendant must prove (1) the existence of an actual error; (2) that the error is plain or obvious; and (3) that the error affected his substantial rights.

During the sentencing hearing in the present case, the trial court followed the sentencing recommendations of the jury with regard to the years of imprisonment (S. Tr. 12-13). The trial court then stated, "I will further assess a $2,000.00 court assessment for his defense, as provided by the public defender" (S. Tr. 13). Defendant argues this assessment of costs was not authorized by Oklahoma law, was excessive, and is improper based on the trial court's failure to determine his ability to pay. As set forth below, defendant's arguments are without merit.

"The statutory duty to impose fees and costs rests with the district courts." *Nesbitt v. State*, 2011 OK CR 19, ¶ 24, 255 P.3d 435, 441. Title 19, Section 138.10, of the Oklahoma Statutes provides in pertinent part, "[t]he Court shall order any person represented by a county indigent defender to pay the costs of representation." *See* 19 O.S.2011, § 138.10(A). Section 138.10 does not, however, set forth any limit as to the amount that may be ordered as to costs of representation. Title 20, Section 55, of the Oklahoma Statutes, directed this Court to "establish qualification rules

42

for determining when a defendant in a criminal case shall be entitled to a court-appointed attorney."

20 O.S.Supp.1993, § 55. That effort resulted in the creation of Rule 1.14, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2011), which provides in pertinent part:

> **B. Payment of Costs of Representation.** The court may order any person represented by a trial indigent defendant, *a county indigent defender,* any member of the Oklahoma Indigent Defense System, or a defense attorney who contracts or volunteers to represent indigents pursuant to Sections 1355-1355.14 of Title 22 to pay the costs for representation in full or in installments pursuant to the procedure set forth in Section 1355.14 of Title 22, after a judicial determination that the person is financially able to pay such costs. *The trial court shall enter an order for the payment of cost of representation* and determine eligibility of right to appointed counsel on appeal *at the time of entering the Judgment and Sentence.*

*Id.* (emphasis added).

Title 19, Section 138.2, *et. seq.,* the statutory provisions allowing for the creation and funding of the Tulsa County Public Defender's Office, the Tulsa County chief public defender, and his or her attorney assistants, repeatedly refer to these individuals as "county indigent defender" and "assistant county indigent defender." Hence, there is no question this Court's Rule 1.14(B), is referring to the indigent defender services provided by the Tulsa County Public Defender's Office.

A similar argument was made in *Rocky Todd Nail v. State*, Case No. F-2012-353, slip op. 7 (Okl. Cr. June 6, 2013) (unpublished and attached as Exhibit B),[9] wherein the Appellant argued the attorney fee assessed by the district court was unauthorized by law and must be vacated. This Court rejected the appellant's argument stating:

> We find no error as 19 O.S.2001, § 138.10(A), directs that the trial court "shall order any person represented by a county indigent defender to pay costs of representation. In assessing these costs, the court shall take into consideration the ability of the

---

[9] This opinion is cited pursuant to Rule 3.5(C)(3) of this Court, and is offered for consideration as no published opinion would serve as well. A copy of this unpublished opinion is attached to this brief pursuant to Rule 3.5(C)(3) of this Court.

43

defendant to pay and any likely hardship which would result."

*Id.  See also Michael Brandon Kirby v. State*, Case No. F-2012-813, slip op. 5 (Okl. Cr. Jan. 21, 2014) ("As the trial court was authorized to impose the costs of representation assessment pursuant to 19 O.S.2011, § 138.10, and the record supports the assessment, we find that Appellant has not shown the existence of an actual error.") (unpublished and attached as Exhibit C).[10]

Like *Nail*, defendant was indigent and the Tulsa County Public Defender's Office was appointed to represent him (O.R. 8,92-93). The trial court assessed the costs of representation at the time of sentencing, which was proper under Oklahoma law. *Nail*, Case No. F-2012-353, slip op. 7. As the trial court's assessment of costs associated with his defense was proper under Oklahoma law, there is no error. Accordingly, plain error did not occur.

Defendant also argues the trial court made no determination regarding his ability to pay the costs associated with his defense. Defendant claims at the present time he is unable to pay the imposed costs. Appellant's Brief, p. 43. Defendant contends the amount of the costs assessed is excessive and should be reduced pursuant to the fee schedule set forth in 22 O.S.2011, § 1355.14. Appellant's Brief, p. 44. First, 22 O.S.2011, § 1355.14, is inapplicable in the present case as the statute applies to defendants who are represented by the Oklahoma Indigent Defense System or defense attorneys who contract with the Oklahoma Indigent Defense System. Defendant was represented by the Tulsa County Public Defender's Office and thus, the fee imposed pursuant to 19 O.S.2011, § 138.10(A), is proper and not excessive.

Additionally, defendant's claims are premature and not properly before this Court. In *Nesbitt*

---

[10] This opinion is cited pursuant to Rule 3.5(C)(3) of this Court, and is offered for consideration as no published opinion would serve as well. A copy of this unpublished opinion is attached to this brief pursuant to Rule 3.5(C)(3) of this Court.

*v. State*, 2011 OK CR 19, ¶ 23, 255 P.3d 435, 440, this Court held, "[a]s long as the mandated

statutory costs are authorized by statute, and are reasonable, uniform, and related to the services

provided, they are allowed." This Court went on to state, "[t]he authority to reduce, dismiss or waive

these assessments also lies with the district courts." *Id.* 2011 OK CR 19, ¶ 24, 255 P.3d at 441

(citing Rule 8.1 *et. seq., Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App.

(2011); 22 O.S.Supp.2004, § 1355.14(E); and *Hubbard,* 2002 OK CR 8, ¶ 13, 45 P.3d at 101).

Although *Nesbitt* involved the revocation of a suspended sentence, its reasoning is applicable and

defendant must assert these claims with the trial court after his release from prison, which is when

the costs are to be paid (O.R. 380, 384, 387, 390).    Accordingly, defendant's arguments are

premature and without merit.

The imposition of costs associated with his defense were proper under Oklahoma law and

thus, there is no error. Defendant's claims the costs are excessive and he is unable to pay the costs

are premature and are not properly before this Court. Therefore, this proposition should be denied.

## PROPOSITION IX

### DEFENDANT RECEIVED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

In his ninth proposition of error, defendant claims he was denied the right to effective

assistance of counsel afforded to him under the Sixth and Fourteenth Amendments of the United

States Constitution. Defendant received effective assistance of counsel.

"This Court reviews claims of ineffective assistance of counsel *de novo*, to determine

whether counsel's constitutionally deficient performance, if any, prejudiced the defense so as to

deprive the defendant of a fair trial with reliable results." *Hanson v. State,* 2009 OK CR 13, ¶ 35,

45

206 P.3d 1020, 1031.  To evaluate trial counsel's performance, this Court adopted the two-part test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).  The two part test requires defendant to show: "(1) that counsel's performance was constitutionally deficient; and (2) that counsel's deficient performance prejudiced the defense." *Malone v. State*, 2013 OK CR 1, ¶ 14, 293 P.3d 198, 206; *see also Davis v. State,* 2005 OK CR 21, ¶ 7, 123 P.3d 243, 246 (same).

In order to prove counsel's performance was deficient, defendant must overcome "the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "demonstrate that counsel's representation was unreasonable under prevailing professional norms and that the challenged action could not be considered sound trial strategy." *Malone*, 2013 OK CR 1, ¶ 15, 293 P.3d at 206.  In order to show prejudice, defendant must "show that there is a reasonable probability that the outcome of the trial would have been different but for counsel's unprofessional errors." *Id.* 2013 OK CR 1, ¶ 16, 293 P.3d at 207.  "The likelihood of a different result must be substantial, not conceivable." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 792, 178 L. Ed. 2d 624 (2011).

The United States Supreme Court holds, "unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.  Providing direction to lower courts on the application of *Strickland*, the United States Supreme Court held, "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2069.  Defendant's ineffective assistance claims do not satisfy the *Strickland* test.

46

In his first argument of ineffective assistance, defendant argues the delay of two years in the formulation of his alibi defense was improper and resulted in ineffective assistance of counsel. Appellant's Brief, p. 45-46. In order to show prejudice, defendant must "show that there is a reasonable probability that the outcome of the trial would have been different but for counsel's unprofessional errors." *Malone,* 2013 OK CR 1, ¶ 16, 293 P.3d at 207. To the extent defendant is claiming a violation of his right to a speedy trial, defendant waived his right to a speedy trial during a motion hearing on defendant's motion for continuance on August 31, 2012 (8/31/2012 Motion Hearing Tr. 5-6). Defense counsel met with alibi witnesses, presented witnesses in support of defendant's alibi defense, and thoroughly impeached the credibility of the State's witnesses. Defendant has not and cannot prove a reasonable probability the outcome of the trial would be different if counsel developed the alibi defense sooner. As defendant cannot meet his burden under *Strickland,* his claim should be denied.

In his second claim of ineffective assistance of counsel, defendant argues counsel's failure to raise the conflict of interest at trial or inform him of the public defender's office's representation of Mr. Savage in his criminal cases resulted in ineffective assistance of counsel. Appellant's Brief, p. 47. As fully set forth in Proposition I, defendant has not shown an actual conflict of interest exists or that an actual conflict of interest adversely affected his lawyers performance. *See Cuyler*, 446 U.S. at 356, 100 S. Ct. at 1722. As defendant fails to make this showing, he cannot prove he was denied constitutionally effective assistance of counsel. *See Perry,* 1988 OK CR 252, ¶ 10, 764 P.2d at 896. Defendant's argument is without merit and should be denied.

In his third claim of ineffective assistance of counsel, defendant argues counsel was ineffective for failing to raise the issue of double punishment during the formal sentencing hearing.

47

As fully set forth in Proposition II, defendant's convictions for the crimes of first degree murder, shooting with intent to kill, and discharging a firearm into a dwelling or public place do not violate Oklahoma's statutory provision against double punishment or the double jeopardy provisions of the United States and Oklahoma Constitutions. Defense counsel did not render ineffective assistance in failing to raise this issue during the formal sentencing hearing as his challenge to the convictions would have been properly overruled. *See Ryder v. State*, 2004 OK CR 2, ¶ 73, 83 P.3d 856, 873 (holding counsel will not be found ineffective when there is no legal grounds to raise the objection); *Frederick v. State*, 2001 OK CR 34, ¶ 189, 37 P.3d 908, 955 ("It is well established that where there is no error, one cannot predicate a claim of ineffective assistance of counsel upon counsel's failure to object."). As defendant cannot meet his burden under *Strickland*, his claim should be denied.

In his fourth claim of ineffective assistance of counsel, defendant claims counsel was ineffective in failing to request the jury instruction that requires the jury to consider each charged count separately. Appellant's Brief, p. 48. As fully set forth in Proposition IV, the jury was properly instructed to consider each charged count separately (O.R. II 324; Tr. I 178). Accordingly, where there is no error, there can be no ineffective assistance of counsel. *Frederick*, 2001 OK CR 34, ¶ 189, 37 P.3d at 955 ("It is well established that where there is no error, one cannot predicate a claim of ineffective assistance of counsel upon counsel's failure to object."). Defendant's argument is without merit and should be denied as defendant cannot meet his burden under *Strickland*.

In his fifth claim of ineffective assistance of counsel, defendant argues counsel was ineffective in failing to request the redaction of Detective Regalado's statements during the video interrogation. Appellant's Brief, p. 48. As set forth in Proposition V, the statements of Detective Regalado were proper interrogation tactics, did not refer to evidence the jury did not have access to,

48

and were not statements of personal opinion. Accordingly, the statements were properly admitted and any request for redaction of the statements or a limiting instruction for the jury would have been denied. *Bland v. State*, 2000 OK CR 11, ¶ 113, 4 P.3d 702, 731 (The jury instructions were not supported by the evidence and would not have been received if counsel had requested them. "Therefore, defense counsel's failure to request the instructions, did not constitute ineffective assistance."). As defendant cannot meet his burden under *Strickland*, his claim should be denied.

In his sixth claim of ineffective assistance of counsel, defendant argues counsel was ineffective in failing to request a jury instruction on how to evaluate Brandon Savage's jailhouse informant testimony. As set forth in Proposition VI, Mr. Savage was not a jailhouse informant within the context of *Dodd,* 2000 OK CR 2, ¶¶ 22-23, 993 P.2d at 783-784. Any request for an instruction on the proper evaluation of jailhouse informant testimony would have been properly denied. Counsel cannot be ineffective in failing to request this instruction. *See Bland*, 2000 OK CR 11, ¶ 113, 4 P.3d at 731 (The jury instructions were not supported by the evidence and would not have been received if counsel had requested them. "Therefore, defense counsel's failure to request the instructions, did not constitute ineffective assistance."). As defendant cannot meet his burden under *Strickland*, his claim should be denied.

In his final claim of ineffective assistance of counsel, defendant argues counsel was ineffective in failing to object to the assessment of court costs. Appellant's Brief, p. 48. As fully set forth in Proposition VII, the assessment of costs for defendant's defense was proper under Oklahoma law. Any objection to the assessment of the costs would have been properly overruled. Accordingly, defense counsel cannot be found ineffective in failing to object to the imposition of the costs. *Frederick,* 2001 OK CR 34, ¶ 189, 37 P.3d at 955 ("It is well established that where there is

no error, one cannot predicate a claim of ineffective assistance of counsel upon counsel's failure to object."). As defendant cannot meet his burden under *Strickland*, his claim should be denied.

Defendant fails to meet his burden under *Strickland*, as he cannot prove counsel's performance was deficient or that he was prejudiced by counsel's actions. Therefore, defendant's argument is without merit and should be dismissed.

## PROPOSITION X

### CUMULATIVE ERROR DID NOT OCCUR. THEREFORE, DEFENDANT WAS NOT DEPRIVED HIS RIGHT TO A FAIR TRIAL.

In his final proposition of error, defendant argues the cumulative effect of the alleged errors deprived him of a fair trial. The State has set forth specific responses herein to rebut each claim and demonstrated there was no error which requires reversal. As there was no error, there can be no accumulation of error. *Jones v. State,* 2011 OK CR 13, ¶ 11, 253 P.3d 997, 1000. As no error occurred, defendant received a fair trial.

## CONCLUSION

Defendant's contentions have been answered both by argument and citations of authority. The State contends no error occurred which would require reversal or modification; and therefore, respectfully requests the Judgment and Sentence be upheld.

Respectfully submitted,

**E. SCOTT PRUITT**
**ATTORNEY GENERAL OF OKLAHOMA**

**ASHLEY L. WILLIS, OBA #22210**
**ASSISTANT ATTORNEY GENERAL**

313 NE 21st Street
Oklahoma City, OK 73105
(405) 521-3921
(405) 522-4534 Fax
**ATTORNEYS FOR APPELLEE**

## CERTIFICATE OF SERVICE

This is to certify that on this 28th day of January 2014, a true and correct copy of the Brief of Appellee was mailed, postage prepaid, to the following:

Stuart W. Southerland
Tulsa County Public Defender's Office
423 South Boulder Ave., Suite 300
Tulsa, OK 74103

ASHLEY L. WILLIS

51

# IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

JAUMON MONDELL OKYERE,    )        NOT FOR PUBLICATION

       Appellant,       )

v.                  )    Case No. F-2006-1055

THE STATE OF OKLAHOMA,    )

       Appellee.      )

**RECEIVED**

DEC 17 2007

Attorney General

**FILED**
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

DEC 17 2007

MICHAEL S. RICHIE
CLERK

## O P I N I O N

**C. JOHNSON, VICE PRESIDING JUDGE:**

Appellant, Jaumon Mondell Okyere, was convicted by a jury in the District Court of Tulsa County, Case No. CF-2005-1593, of First Degree Murder (Count I) and Child Neglect (Count II). The jury assessed punishment at life imprisonment without the possibility of parole on Count I and twenty-five years imprisonment on Count II. The trial court sentenced Appellant accordingly, ordering the sentences to run consecutively. From this Judgment and Sentence Appellant has filed a timely appeal to this Court.

### FACTS

Melonie Totty and Appellant had been in a relationship with each other for several years prior to February and early March of 2005. During these months they were separated and Totty began seeing another man, Richard Briggs. When Appellant found out that Totty was seeing Briggs, he became angry and told her that he was going to kill Briggs. On March 16, 2005, Appellant told Totty to call Briggs to set up a meeting with him. Appellant wanted Totty to arrange to pick up Briggs and drive him to a location near

**EXHIBIT**

**A**

Appellant's mother's house where Appellant would be waiting for them. Totty tried several times to reach Briggs by telephone but Briggs did not answer her calls. When Totty was unable to reach Briggs, Appellant pointed his gun at her and threatened to kill her and her family. After Appellant calmed down, he and Totty went to her residence where they went to sleep.

The next day, on March 17, 2005, after Totty got off work at 4:00 p.m., she met Appellant at the apartment of mutual friends, Melvin Matthews and Jennifer Morrison. While there, Appellant was in possession of a red duffle bag in which he carried a Mac 11 nine millimeter semiautomatic gun. He continued to ask Totty if she called Briggs. Totty called Briggs and eventually spoke with him. She told him that she wanted to meet him that night and Briggs agree to call her back. After Totty and Appellant left Matthews' and Morrison's apartment, they went to Appellant's sister Shamika's apartment. While at Shamika's apartment, Totty noticed that the gun Appellant carried in his red duffle bag had a blue towel wrapped around the front of it. At about midnight, Briggs called Totty back and the two made plans to meet.

Totty and Briggs met at a McDonald's at about 1:00 a.m. on March 18, 2005. Pursuant to Appellant's directive, Totty told Briggs that her friend's boyfriend's car had broken down and she needed to help him. Briggs had Totty follow him to his house where he dropped off his car and got into Totty's car, bringing with him his five month old daughter who was strapped into a child car seat. Before they went to 'assist' Appellant, they stopped at a convenience store where Briggs purchased some juice, Grandma's cookies and blunts.

When Briggs got back into Totty's car, she drove to a location on 76th Street North where Appellant had pulled his car to the side of the road. The hood was up and the hazard lights were flashing to make it appear that the car had broken down. Totty stopped by Appellant's car and Appellant got into the backseat of her car carrying with him his red duffle bag.

Appellant directed Totty to turn on Pittsburg and then pull into a circle drive around an oil well. When she stopped, Appellant got out of the car, opened the front passenger door and pointed the gun, still wrapped in a blue towel, at Briggs. He ordered Briggs out of the car and moved him toward the front of the car where he shot him several times. He then got back in the car and told Totty to take him back to where the car he was driving was parked by the side of the road. After this, Appellant changed out of his clothes and discarded them in a trash can, he put Briggs' baby, still in its car seat into the back of a pickup parked in an apartment parking lot,[1] and he cleaned and disassembled his gun which he also discarded. Totty noticed that the towel wrapped around the gun looked burnt.

Briggs' body was discovered at around 6:00 a.m. on March 18, 2005. Blue cloth fibers were found on his face and within the blood pool near his head. A package of Grandma's cookies was also found near his body. Six nine millimeter shell casings were found at the scene. Briggs had been shot thirteen times and it was determined that he died from multiple gunshot wounds.

---

[1] The baby was discovered at around 5:30 in the morning when an occupant of the apartment complex heard it crying as he was walking out to his car to leave for work. It was very cold and the child was uncovered but otherwise unharmed.

## PROPOSITIONS

Appellant and Melonie Totty were charged as co-defendants. Totty, while represented by Don Palik, a Tulsa County Assistant Public Defender, waived her right to a preliminary hearing and testified against Appellant at his preliminary hearing. Appellant was, at the time, represented by private counsel. Subsequent to Appellant's preliminary hearing, Totty engaged private counsel and Appellant's private counsel withdrew from representation. Don Palik, from the Tulsa County Public Defender's Office was appointed by the district court to represent Appellant. Shortly thereafter, Mr. Palik filed an application to withdraw as attorney of record citing conflict of interest as the basis for his request.[2] The district court allowed Mr. Palik to withdraw but ordered the Tulsa County Public Defender's Office to continue to represent Appellant. On March 28, 2006, prior to Appellant's trial, a hearing was held on the issue of representation. Over the protestations of both Appellant and the Tulsa County Public Defender, Pete Silva, the district court ruled at the hearing that the new Assistant Public Defender assigned to represent Appellant, Allen Malone, was not prevented from doing so by a conflict of interest.

In his first proposition, Appellant argues that the district court's decision resulted in the denial of his Sixth Amendment right to the effective assistance

---

[2] Appellant also protested his representation by the Tulsa County Public Defender's Office in a letter he wrote to the district court judge.

of counsel.[3]  The Supreme Court has recognized that, "[w]here a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981). The Sixth Amendment right to assistance of counsel "contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer should simultaneously represent conflicting interests."  *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed.2d 680 (1942). However, the Supreme Court also has recognized that "[r]equiring or permitting a single attorney to represent codefendants, ... is not *per se* violative of constitutional guarantees of effective assistance of counsel."  *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978).

Where, as in the present case, the risk of conflict of interest is brought to the trial court's attention in a timely fashion, it is incumbent upon the trial court "either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." *Holloway*, 435 U.S. at 484, 98 S.Ct. at 1178.  The failure of the trial court to adequately address a timely objection to joint representation of conflicting interests will be found to deprive a defendant of the constitutional guarantee of assistance of counsel. *Id.*, 435 U.S. at 484-90, 98 S.Ct. at 1178-82. *See also Brown v. State,*

---

[3] In the context of this proposition Appellant discusses the Oklahoma Rules of Professional Conduct at some length.  Such rules, while pertinent to any discussion of attorney conduct when the rules touch on subjects raised in a claim of ineffectiveness, do not lay the groundwork for claims of ineffectiveness. *See Smith v. State,* 2006 OK CR 38, ¶ 36, 144 P.3d 159, 167.

1998 OK CR 77, ¶ 18, 989 P.2d 913, 922.

The Court's focus in *Holloway* was upon protestations against joint representation made by defense counsel. The Supreme Court noted that "most courts have held that an attorney's request for the appointment of separate counsel, based upon his representation as an officer of the court regarding a conflict of interests, should be granted." *Id.*, 435 U.S. at 485, 98 S.Ct. at 1179. This is due, in part, to the fact that defense counsel has the ethical obligation to advise the court of any conflicts and is in the best position to determine when a conflict of interest exists or will probably develop in the course of a trial. *Id.*, 435 U.S. at 485-86, 98 S.Ct. at 1179.

In the present case, it was defense counsel, Mr. Palik, who properly advised the district court of a conflict of interest after the court appointed him to represent Appellant subsequent to his prior representation of the co-defendant in an earlier proceeding. The district court properly responded by allowing Mr. Palik to withdraw. However, at the hearing on representation, the Tulsa County Public Defender, Mr. Silva advised the district court as follows:

> [W]e continue in the Public Defender's Office to take the position that the law office rule does apply to our office. I have explained to Mr. Okyere that our original motion to withdraw had nothing to do with him personally. It was concerning our representation of a now State's witness, and, of course, the Court recognized that conflict.
>
> My concern goes - - while I have not read the gentleman's letter to the Court, my concern goes to the appearance and the propriety of our office continuing to represent an individual where we had a hand in preparing evidence, facilitating evidence to be used against that individual. I have assured the gentleman that my office will vigorously represent him, that we'll have no mixed allegiances, that Mr. Palik will have nothing to do with this case, and it has been

6

assigned, in fact, to a lawyer, while not new to the practice of law is new to our office, who certainly knows Mr. Palik but has not been working with Mr. Palik and in fact was not even in our office when the arrangements with the co-defendant were made in this case.

However, I certainly do understand the gentleman's concerns, and I don't know if there's anything I can do to allay those concerns, and we continue to take the position that the law office rule does cover our office.

(Transcript of Hearing Regarding Alternate Counsel, pp. 3-4).

After considering the Public Defender's concerns and Appellant's protestations, the district court declined to remove the Tulsa County Public Defender's Office from representing Appellant finding that:

[T]he fact that somebody is in that same Public Defender's Office doesn't cause a conflict as to everyone. And when a person doesn't have any association with the previous problem or the previous taint, then there isn't any reason that they couldn't represent you.

. . .

So at least for now, that's - - and Mr. Silva has assured me and you that that person will not be tainted in the future, they won't go to Don Palik and talk to him about what's going on and they will represent you vigorously in this case within the bounds of the law.

(Transcript of Hearing Regarding Alternate Counsel, p. 5).

Despite the opportunity provided by the district court for inquiry into the possibility of a conflict of interest, the Tulsa County Public Defender did not advise the court at the hearing of a conflict of interest regarding the continued representation of Appellant by his office. Rather, he protested the representation based upon the appearance of impropriety and an office policy against such representation and went on to assure the Court and Appellant that his office could provide vigorous, conflict free representation. While we

7

strongly agree with the principles set forth in *Holloway,* that trial courts should give great credence to requests made by defense counsel for the appointment of separate counsel based upon conflict of interests, such a request was simply not made by the Public Defender at the hearing on representation.

We find that the trial court took adequate steps to ascertain whether the risk of a conflict of interest was too remote to warrant separate counsel and the record supports the court's decision not to appoint counsel outside the public defender's office. We cannot conclude either that an actual conflict of interest adversely affected Appellant's lawyer's performance, that an actual, relevant conflict existed during the proceedings, or that there was a substantial possibility that a conflict of interest affected Appellant's lawyer's representation. Appellant's counsel at trial prosecuted the defense with competence and vigor. Appellant was not denied his constitutional right to effective assistance of counsel.

In his second proposition Appellant argues that it was reversible error for the trial court to grant the State's motions for continuance over his objection because the State failed to properly file written motions as is required by 12 O.S.2001, § 668.[4]  Section 668 does impose procedural requirements for requesting continuances on account of the absence of evidence. However, the overarching concern is whether the trial court's grant or denial of a

---

[4] We reject Appellant's argument that violation of section 668 is structural error. Structural errors are those which affect a trial from beginning to end, such as the absence of counsel for a defendant, a biased judge, the unlawful exclusion of members of the defendant's race from a grand jury, the right to self-representation at trial, and the right to a public trial. *Arizona v. Fulminante,* 499 U.S. 279, 309-10, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991).

8

continuance impinges on a substantial right of the accused.[5]  20 O.S.2001, 3001.1.  "Unless a procedural failure results in a miscarriage of justice or constitutes a substantial violation of appellant's right's this Court cannot set aside a verdict." *Hunnicutt v. State*, 1988 OK CR 91, ¶ 7, 755 P.2d 105, 109.

Although record indicates that the trial was continued several times, and Appellant complains about the granting of more than one motion for continuance, only one continuance, that granted on October 3, 2005, can fairly be inferred to have been requested on account of the absence of evidence. Accordingly, only this continuance was subject to the procedural requirements of section 668.  Even if the trial court erred in granting the continuance on October 3, 2005, this error cannot be found to have resulted in a miscarriage of justice or a substantial violation of Appellant's rights.  While Appellant claims he was prejudiced by the grant of additional time to the State for the purpose of securing cell phone records, Appellant's assertion of prejudice is speculative, at best.  It is likely that the evidence the State apparently sought extra time to produce would have been forthcoming and admissible either sponsored through a previously endorsed witness or in rebuttal.  Appellant's additional claim of prejudice based upon his alleged conflict of interest is without merit in light of discussion above in Proposition I.  This argument warrants no relief.

Appellant argues in Proposition III, that the evidence presented at trial

---

[5] This Court has not hesitated to grant relief to a defendant when a trial court's ruling on a continuance request deprived him of a fair trial, regardless of whether the statutory procedural requirements were followed to the letter. *See Warner v. State*, 2001 OK CR 11, ¶¶ 12-17, 29 P.3d 569, 574-75; *Plumlee v. State*, 1971 OK CR 309, ¶¶ 21-23, 488 P.2d 939, 943-44.

was insufficient to prove beyond a reasonable doubt all of the elements of First Degree Murder. He specifically complains that the only evidence implicating him in the death of Richard Briggs was the trial testimony of Melonie Totty. This accomplice testimony, he asserts, was not sufficiently corroborated.

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." 22 O.S.2001, § 742. Rather, accomplice testimony must be corroborated with evidence, which standing alone tends to link the defendant to the commission of the crime charged. *Pink v. State*, 2004 OK CR 37, ¶ 15, 104 P.3d 584, 590. An accomplice's testimony need not be corroborated in all material respects but requires "at least one material fact of independent evidence which tends to connect the defendant with the commission of the crime." *Cummings v. State*, 1998 OK CR 45, ¶ 20, 968 P.2d 821, 830. "Further, circumstantial evidence can be adequate to corroborate the accomplice's testimony." *Id.*

It is clear that Melonie Totty was an accomplice as she could have been indicted for the crime for which Appellant was tried.[6] *See Anderson v. State*, 1999 OK CR 44, ¶ 23, 992 P.2d 409, 418. Thus, it was indeed necessary that Totty's testimony be properly corroborated. While all evidence of the actual killing was provided through Totty's testimony, other witnesses provided

---

[6] Totty entered a guilty plea to the crime of Second Degree Murder on October 2, 2006. She was sentenced to thirty years imprisonment with ten years suspended.

additional evidence connecting Appellant with the commission of the crime.

Melvin Matthews testified that he knew Appellant and Totty in the winter of 2005 and remembered that around February of that year Appellant and Totty broke up. He testified that Appellant seemed upset about the break-up and started carrying a red gym bag during this time. Matthews testified that Appellant carried a Mac 11 semiautomatic with nine millimeter bullets in this bag. He also testified that Appellant told him that he wrapped the gun in a towel when he practiced shooting it to make it quieter. Matthews testified that on the evening of March 17, 2005, Appellant and Totty came over to his apartment. Appellant was upset and told him that he was going to kill someone who owed him money. Appellant had his red bag with him at the time. Appellant and Totty left after about an hour. Later that night, Totty called and spoke with Matthews. She was upset and sounded like she had been crying. Totty told him that Appellant wanted her to set up some guy so that Appellant could kill him. Matthews did not see Appellant again until the next morning. He was not carrying the red bag. When Matthews asked about the bag, Appellant replied that someone had "got down through here last night" and he had to get rid of it.

We find Matthews' testimony provided independent evidence of at least one material fact tending to connect the defendant with the commission of the crime. Totty's testimony was properly corroborated and the evidence was sufficient to support the finding by a rational trier of fact that each of the essential elements of the crime charged existed beyond a reasonable doubt.

*Spuehler v. State,* 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-204; *Easlick v. State,* 2004 OK CR 21, ¶ 15, 90 P.3d 556, 559.

Appellant argues in his fourth proposition that his conviction for Child Neglect must be reversed because the jury was improperly instructed on this crime. Specifically, he asserts that one of the elements of this crime was omitted from the instruction given to the jury. The omitted element was the requirement that the crime be committed by a person responsible for the child's health or safety.[7] Although defense counsel did not object to the instruction as given, Appellant asserts on appeal that this omission constituted plain error which requires reversal.

It is true that the general rule is that failure to object to the trial court's instructions waives all but plain error. *See Wood v. State,* 2007 OK CR 17, ¶ 17, 158 P.3d 467, 475. However, this Court has held that, "[w]hether or not the defendant agrees to the instructions, it is plain error to fail to instruct on the elements of a crime." *Harmon v. State,* 2005 OK CR 19, ¶ 7, 122 P.3d 861, 864. Even so, reversal is not warranted if we find the error was harmless beyond a reasonable doubt. *Mitchell v. State,* 2005 OK CR 15, ¶ 71, 120 P.3d 1196, 1214. "The question is whether, beyond a reasonable doubt, the jury's

---

[7] The Oklahoma Jury Instructions, OUJI-CR (2nd) 4-37, set forth the following instruction for the crime of Child Neglect:

No person may be convicted of neglect of a child unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
First, a person responsible for the child's health or safety;
Second, willfully/maliciously;
Third, failed/omitted to provide;
Fourth, (adequate food, care, shelter, medical care, and supervision)/(special care made necessary by the physical/mental condition of the child);
Fifth, for a child under the age of eighteen.

12

verdict was not affected by the erroneous instruction." *Harmon,* 2005 OK CR 19, ¶ 17, 122 P.3d at 864.

The Child Neglect statue states an intent to "provide for the protection of children who have been abused or neglected and who may be further threatened by the conduct of persons responsible for the health, safety or welfare of such children." 10 O.S.Supp.2002, § 7102(A). A "person responsible for a child's health, safety or welfare," is specifically defined within this statute to include the following individuals:

> [A] parent; a legal guardian; a custodian; a foster parent; a person eighteen (18) years of age or older with whom the child's parent cohabitates or any other adult residing in the home of the child; an agent or employee of a public or private residential home, institution, facility or day treatment program as defined in Section 175.20 of this title; or an owner, operator, or employee of a child care facility as defined by Section 402 of this title....

10 O.S.Supp.2002, § 7102(B)(5).

While, as the State accurately advises, this Court has held that a babysitter meets the definition of a person responsible for a child's health or safety[8], it is not, as the State argues, a forgone conclusion that a person in Appellant's position would also be found to be a person responsible for a child's health, safety or welfare. This is especially true in light of the definition of the term provided in section 7102(B)(5). Accordingly, this Court cannot find that the failure to properly instruct the jury on all elements of the crime of Child Neglect was, under the facts of this case, harmless beyond a reasonable doubt.

---

[8] *Townsend v. State,* 2006 OK CR 39, 144 P.3d 170.

13

Appellant's Judgment and Sentence on Count II, Child Neglect, must be reversed with instructions to dismiss.

In his fifth proposition, Appellant complains that the trial court erred in excusing for cause four prospective jurors and one alternate juror. He argues specifically that none of the excused jurors provided a sufficient basis upon which the trial court could properly determine that they were unable to perform their duties under the law. The record reflects that three of the prospective jurors stated that they would be unable to listen fairly to the evidence, follow the instructions and reach a fair and impartial verdict. The other potential juror appeared to have been less than candid about health problems that could affect his ability to sit as a juror and the alternate juror told the trial court that he, too, could not follow the law. Neither the prosecutor nor defense counsel objected to the excusal of any of the prospective jurors. Nor did they seek to inquire further of the prospective jurors.

Appellant fails to establish that these dismissals were erroneous and cites no relevant authority in support of his claim. He does not allege that any juror who served on his jury was unfair or biased against him; and he totally fails to establish any prejudice. This Court has held that the decision whether to excuse a juror for cause is within the trial court's discretion. Appellant fails to show the trial court abused its discretion excusing these prospective jurors for cause and this proposition is denied. *Browning v. State*, 2006 OK CR 8, ¶

11, 134 P.3d 816, 829.  *See also Thompson v. State*, 2007 OK CR 38, ¶ 30, ___ P.3d ___, ___.

In his sixth assignment of error, Appellant complains that the trial court erred in giving the jury the standard prior inconsistent statement instruction regarding three defense witnesses.  He asserts that this instruction was not warranted because there was little evidence presented that these witnesses had made prior inconsistent statements.  The determination of which instructions will be given to a jury is a matter entrusted to the discretion of the trial court and absent an abuse of discretion, this Court will not reverse if the instructions as a whole accurately state the applicable law.  *Smith v. State*, 2007 OK CR 16, ¶ 79, 157 P.3d 1155, 1179.  Upon review of the record before this Court, we find that the evidence was sufficient to warrant the limiting instruction on the proper use of impeachment evidence regarding each of these defense witnesses. We do not find that the trial court abused its discretion in so instructing.

Appellant argues in his seventh proposition that the trial court improperly permitted a State rebuttal witness to testify beyond his field of expertise.  The witness about whom Appellant complains, was Mr. Jeff Rose, an employee of U.S. Cellular.  Mr. Rose testified that in his opinion, the cellular telephone records indicated that Appellant's cell phone was not in a stationary location in the early morning hours of March 18, 2005.[9]

---

[9] This rebuttal evidence was relevant because at trial Appellant testified that although he set Briggs up to be "tortured" by other persons, he was not present when Briggs was killed. Rather, Appellant claimed to have been at his sister's apartment speaking on his cell phone with Totty and the others who were responsible for Briggs' death.  Appellant testified that he was at this apartment from about 11:00 p.m. on March 17 until about 8:00 or 9:00 a.m. the following morning.

Expert opinion testimony is based on "scientific, technical, or other specialized knowledge" and can be provided only by a witness who is "qualified as an expert," in the field at issue, "by knowledge, skill, experience, training, or education." 12 O.S.2001, § 2702. Admission of expert testimony is within the trial court's discretion. *Warner v. State*, 2006 OK CR 40, ¶ 22, 144 P.3d 838, 860. We find that the trial court did not abuse its discretion in allowing Mr. Rose, an engineer with six years experience as a regional performance manager at U.S. Cellular, to give opinions about cell tower routing as he was qualified to do so based upon his specialized knowledge of such.

In his eighth proposition, Appellant argues that he was denied his Sixth Amendment right to the effective assistance of counsel for several alleged failings of his trial attorney.[10]  This Court reviews claims of ineffective assistance of counsel under the two-part *Strickland* test that requires an appellant to show: [1] that counsel's performance was constitutionally deficient; and [2] that counsel's performance prejudiced the defense, depriving the appellant of a fair trial with a reliable result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Davis v. State*, 2005 OK CR 21, ¶ 7, 123 P.3d 243, 246. It is not enough to show that counsel's failure had some conceivable effect on the outcome of the proceeding.

---

[10] In conjunction with the claims in this proposition, Appellant has filed a Rule 3.11 motion for an evidentiary hearing on the issue of ineffective assistance of counsel. Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2007).  To warrant an evidentiary hearing, Appellant must present this Court with clear and convincing evidence of a strong possibility that counsel was ineffective for failing to identify or use the evidence raised in the motion. Appellant's submitted material does not meet this standard.

Rather, an appellant must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Head v. State*, 2006 OK CR 44, ¶ 23, 146 P.3d 1141, 1148. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In support of his proposition, Appellant argues that trial counsel was ineffective for failing to interview several witnesses in preparation for Appellant's defense, for failing to secure evidence provided to Appellant's prior attorney, for failing to conduct inquiry into the jurors excused for cause, for failing to object to prior inconsistent statement instructions, for failing to object to the use of Mr. Rose as an expert witness and for failing to object to the instruction on Child Neglect. Some of these alleged failing concern issues raised and addressed above. We found in Proposition VI that the trial court did not abuse its discretion in giving the instructions on prior inconsistent statements and we found in Proposition VII that the trial court did not abuse its discretion in allowing Mr. Rose to testify as an expert. Thus, as to these two alleged failings of counsel, Appellant has not shown that counsel's performance was deficient. While we did hold in Proposition IV that the instruction on Child Neglect was improper, trial counsel's failure to object to that instruction is remedied by our reversal of Appellant's conviction on Count II. As to the remaining allegations, we find that even if counsel was deficient for failing to interview certain witnesses, secure taped statements and vior dire the dismissed jurors more thoroughly, there has been no showing that this

deficient performance deprived Appellant of a fair trial with a reliable result. Appellant has not shown a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. Accordingly, this proposition of error is denied.

In his final proposition Appellant claims that the trial errors, when considered cumulatively, warrant a new trial or sentence modification. This Court has recognized that when there are "numerous irregularities during the course of [a] trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial." *DeRosa v. State,* 2004 OK CR 19, ¶ 100, 89 P.3d 1124, 1157, quoting *Lewis v. State,* 1998 OK CR 24, ¶ 63, 970 P.2d 1158, 1176. Upon review of Appellant's claims for relief and the record in this case we conclude that although his trial was not error free, any errors and irregularities, even when considered in the aggregate, do not require reversal because they did not render his trial fundamentally unfair or taint the jury's verdict. We did find, however, in Proposition IV, that instructional error requires Appellant's Judgment and Sentence on Count II be reversed with instructions to dismiss.

## DECISION

The Judgment and Sentence of the district court on Count I is **AFFIRMED**. The Judgment and Sentence of the district court on Count II is **REVERSED** with instructions to **DISMISS**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2007), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE TOM C. GILLERT, DISTRICT JUDGE

18

**APPEARANCES AT TRIAL**

ALLEN MALONE
ASSISTANT PUBLIC DEFENDER
423 SOUTH BOULDER, STE. 300
TULSA, OK 74103
ATTORNEY FOR DEFENDANT

WILLIAM MUSSEMAN
JARED SIGLER
ASSISTANT DISTRICT ATTORNEYS
500 SOUTH DENVER
TULSA, OK 74103
ATTORNEYS FOR THE STATE

**APPEARANCES ON APPEAL**

STUART W. SOUTHERLAND
ASSISTANT PUBLIC DEFENDER
423 SOUTH BOULDER, STE. 300
TULSA, OK 74103
ATTORNEY FOR APPELLANT

W. A. DREW EDMONDSON
ATTORNEY GENERAL OF OKLAHOMA
JAY SCHNIEDERJAN
ASSISTANT ATTORNEY GENERAL
313 N.E. 21st ST.
OKLAHOMA CITY, OK 73105
ATTORNEYS FOR THE STATE

**OPINION BY C. JOHNSON, V.P.J.:**

| | |
|---|---|
| LUMPKIN, P.J.: | CONCURS IN PART/DISSENTS IN PART |
| CHAPEL, J.: | CONCURS |
| A. JOHNSON, J.: | CONCURS IN PART/DISSENTS IN PART |
| LEWIS, J.: | CONCURS |

RA

**LUMPKIN, PRESIDING JUDGE:  CONCUR IN PART/DISSENT IN PART**

I concur in the Court's decision to affirm the judgment and sentence in Count I, but I must dissent to the reversal with instructions to dismiss in Count II.  The proper procedure to correct an instructional error is to remand the case for retrial under the proper instructions.  Just as with our prior decision of *Townsend v. State*, 2006 OK CR 39, 144 P.3d 170, finding that a babysitter is a person responsible for a child's health or safety, this case presents a fact question for a jury to decide when properly instructed.  The facts could easily support a finding that Appellant became the *de facto* custodian of the child and was responsible under the statute.  I would remand Count II for a new trial with correct instructions of the law.

I am authorized to state that Judge Arlene Johnson joins in this Concur in Part/Dissent in Part.

## IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

ROCKY TODD NAIL,                )
                                )
      Appellant,            )          **NOT FOR PUBLICATION**
  v.                            )
                                )          Case No. F-2012-353
STATE OF OKLAHOMA               )                    **FILED**
                                )          IN COURT OF CRIMINAL APPEALS
      Appellee.             )            STATE OF OKLAHOMA

### S U M M A R Y   O P I N I O N          JUN – 6 2013

**LUMPKIN, JUDGE:**                         MICHAEL S. RICHIE
                                                    CLERK

Appellant Rocky Todd Nail was tried by jury and convicted of Eluding a Police Officer, After Former Conviction of Two or More Felonies (21 O.S.2011, § 540A(B), Count I; Running a Roadblock, After Former Conviction of Two or More Felonies (21 O.S.2011, § 540(B)), Counts II and III; Possession of Drug Paraphernalia (63 O.S.2011, § 2-405)) Count VII; and Failure to Stop at a Red Light (47 O.S.2011, § 2-202), Count VIII, in the District Court of Tulsa County, Case No. CF-2011-2056.[1] The jury recommended as punishment twenty-five (25) years imprisonment and a $5,000.00 fine in Count I, fifteen (15) years imprisonment and a $3,000.00 fine in each of Counts II and III; one year in the county jail and a $1,000.00 fine in Count VII and a $500. fine in Count VIII. The trial court sentenced accordingly, ordering the sentences to be served consecutively. It is from this judgment and sentence that Appellant appeals.

---

[1] A demurrer to Count V, Unlawful Possession of Controlled Drug, was sustained at Preliminary Hearing and the count was dismissed. The jury acquitted Appellant in Count IV, Assault with a Dangerous Weapon, and in Count VI, Resisting an Officer.



EXHIBIT
B

Appellant raises the following propositions of error in support of his appeal:

    I.    The evidence was insufficient to support Appellant's conviction in Count Two, running a roadblock located at the 4000 block of U.S. Highway 169.

    II.    The evidence was insufficient to support Appellant's conviction in Count Three, running a roadblock located at 5500 block of U.S. 169.

    III.    It was error for the district court to fail to instruct the jury on a lesser-included offense of misdemeanor eluding in Count One, felony eluding. Appellant's theory of defense was that his actions failed to endanger any other person as required by 21 O.S. 2011, § 540A(B). The failure to properly instruct the jury on his theory of defense violated provisions of Oklahoma law as well as the Fourteenth Amendment to the United States Constitution.

    IV.    The District Court should have provided the jury with an honest answer to the note submitted by the jury. The incomplete response denied Appellant a reliable sentencing proceeding in violation of Oklahoma law and the Fourteenth Amendment to the United States Constitution.

    V.    Appellant received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

    VI.    The evidence was insufficient to support Appellant's conviction in Count Eight, running a red light.

    VII.    The $2,500.00 Attorney fee assessed by the district court is unauthorized by law and must be vacated.

    VIII.    Appellant's sentence is excessive and should be modified.

After thorough consideration of these propositions and the entire record before us on appeal including the original record, transcripts, and briefs of the

2

parties, we have determined that neither reversal nor modification of sentence is warranted under the law and the evidence.

In Proposition I, reviewing the evidence in the light most favorable to the state, we find any rational trier of fact could have found the essential elements of the crime of running a roadblock located at the 4000 block of U.S. 169 (Count II) beyond a reasonable doubt. *Davis v. State*, 2011 OK CR 29, ¶ 74, 268 P.3d 86, 111 *citing Easlick v. State*, 2004 OK CR 21, ¶ 15, 90 P.3d 556, 559; *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-204. *See also* 21 O.S.2011, § 540B.

In Proposition II, reviewing the evidence in the light most favorable to the state, we find any rational trier of fact could have found the essential elements of the crime of running a roadblock located at the 5500 block of U.S. 169 (Count II) beyond a reasonable doubt. *Davis,* 2011 OK CR 29, ¶ 74, 268 P.3d at 111. *See also* 21 O.S.2011, § 540B.

In Proposition III, we review only for plain error Appellant's allegation that the trial court erred in failing to give, *sua sponte,* an instruction in Count I on the lesser included offense of misdemeanor Eluding a Police Officer. *Hogan v. State,* 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. To be entitled to relief under the plain error doctrine, Appellant must prove: 1) the existence of an actual error (i.e., deviation from a legal rule); 2) that the error is plain or obvious; and 3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding. *Id.;* 20 O.S.2001, § 3001.1. If these elements are met, this Court will correct plain error only if the error "seriously affect[s] the

3

fairness, integrity or public reputation of the judicial proceedings" or otherwise represents a "miscarriage of justice." *Id.*

Whether any particular offense is a lesser included offense depends upon which lesser included offense test or approach is utilized and whether the trial evidence warrants the instruction. *Davis,* 2011 OK CR 29, ¶ 101, 268 P.3d at 115, *citing Shrum v. State,* 1999 OK CR 41, ¶ 7, 991 P.2d 1032, 1035. "This two part analysis first requires courts to make a "legal determination about whether a crime constitutes [a lesser included offense] of the charged crime or whether it is legally possible for the charged crime to include [a lesser included offense]." *Id.* To determine what constitutes a lesser included offense of any charged crime, this Court looks not only at the elements but also to the crimes the trial evidence tends to prove. *Id. Prima facie* evidence of the lesser included offense must be presented at trial in order to warrant giving the lesser included instruction. *Id. Prima facie* evidence of a lesser included offense is that evidence which would allow a jury rationally to find the accused guilty of the lesser offense and acquit him of the greater. *Id.*

Misdemeanor Eluding a Police Officer (21 O.S.2011 § 540A(A)) is a legally recognized lesser included offense of Feloniously Eluding a Police Officer (21 O.S.2011, § 540A(B)). However, the evidence in this case does not establish a *prima facie* case of misdemeanor eluding. The uncontroverted evidence shows that Appellant clearly drove in such a manner as to endanger others. Therefore, we find no error in absence of the instruction on misdemeanor eluding, and thus no plain error.

4

In Proposition IV, we review only for plain error Appellant's claim that he was denied a reliable sentencing proceeding by the trial court's response to the jury's question asking if they chose to run the sentences concurrent or consecutive. *See Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923.

The court responded that the issue of concurrent or consecutive sentencing was not for the jury's consideration. Appellant admits the answer was "not an incorrect response" but argues "it was not really a complete or honest one either, for the court had already decided that the sentences would run consecutively."

Two statutes address concurrent and consecutive sentencing. In 22 O.S.2011, § 976 the Legislature gave the trial court, not the jury, the option of sentencing the defendant to serve multiple terms of imprisonment concurrently or consecutively. This Court has consistently held the decision whether to run a defendant's sentences concurrently or consecutively rests within the sound discretion of the trial court. *See Neloms v. State,* 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170; *Pickens v. State,* 1993 OK CR 15, ¶ 41, 850 P.2d 328, 338; *Kamees v. State,* 1991 OK CR 91, ¶ 21, 815 P.2d 1204, 1208-1209; *Sherrick v. State,* 1986 OK CR 142, ¶ 16, 725 P.2d 1278, 1284; *Lloyd v. State,* 1982 OK CR 184, ¶ 4, 654 P.2d 645, 647.

In 21 O.S. 2011, § 61.1 the Legislature directed the Department of Corrections as to how the sentences are to be served as a matter of law if the Judgment and Sentence is silent regarding whether the sentences are to run concurrent or consecutive. *See Higgins v. Branam,* 2006 OK CR 23, ¶ 3, 137

5

P.3d 1240, 1244 -1245 (Lumpkin, J., concur in part/dissent in part) ("Title 21 O.S.2001, § 61.1 sets out how sentences are to be served "by operation of law" if the judgment and sentence is silent regarding whether it is to run consecutive or concurrent. Section 61.1 provides that sentences are to run consecutively with the service of the sentences to be based on date of receipt by the Department of Corrections, *i.e.* first received, first served, second received, second served, etc., unless the judgment and sentence specifically provides that it is to run concurrently with another judgment and sentence"). *See also Riley v. State*, 1997 OK CR 51, ¶ 2, 947 P.2d 530, 535 (Lumpkin, J., concur in results). We have not previously held that the jury should be specifically informed of these two procedural statutes. We do not do so now.

Appellant has failed to show the trial court had determined prior to sentencing how the sentences were to be served. Further, we have previously found no error in trial court responses which informed the jury that the determination of concurrent or consecutive sentencing was not for their consideration. *See Skinner v. State*, 2009 OK CR 19, ¶ 37, 210 P.3d 840, 854; *Pickens*, 1993 OK CR 15, ¶ 41, 850 P.2d at 338. Accordingly, we find no error in the court's failure to inform the jury of the specifics of §§ 61.1 and 976, and thus no plain error.

In Proposition IV, in reviewing an ineffective assistance of counsel claim, the appellant must prove that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Eizember v. State*, 2007 OK CR 29, ¶ 151-152, 164 P.3d 208, 244, *citing Strickland v. Washington*, 466 U.S.

6

668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Unless the defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable. *Id.* Counsel's failure to request a jury instruction on misdemeanor eluding the police does not satisfy the requirements of *Strickland* because any such request would have been properly denied. *Cruse v. State*, 2003 OK CR 8, ¶ 11, 67 P.3d 920, 923; *Frederick v. State*, 2001 OK CR 34, ¶ 189, 37 P.3d 908, 955; *Phillips v. State*, 1999 OK CR 38, ¶ 104, 989 P.2d 1017, 1044.

In Proposition VI, reviewing the evidence in the light most favorable to the state, we find any rational trier of fact could have found the essential elements of the crime of failure to stop at a red light (Count VIII) beyond a reasonable doubt. *Davis,* 2011 OK CR 29, ¶ 74, 268 P.3d at 111.

In Proposition VII, we review only for plain error the trial court's $2,500.00 assessment for providing counsel to the defendant. *See Hogan,* 2006 OK CR 19, ¶ 38, 139 P.3d at 923. We find no error as 19 O.S.2001, § 138.10(A), directs that the trial court "shall order any person represented by a county indigent defender to pay the costs of representation. In assessing these costs, the court shall take into consideration the ability of the defendant to pay and any likely hardship which would result." That defense counsel was never paid from the court fund is not an issue for our consideration as 19 O.S.2011, § 138.4 provides that assistant public defenders are paid a monthly salary. Finding no error, we find no plain error.

7

In Proposition VIII, we find Appellant's sentence is not excessive but is within statutory range and appropriate based upon the evidence. *See Bartell v. State*, 1994 OK CR 59, ¶ 33, 881 P.2d 92, 101 (if a sentence is within the statutory guidelines, we will not disturb that sentence unless, under the facts and circumstances of the case, it is so excessive as to shock the conscience of the Court). This Court has previously rejected a proportionality analysis. *See Rea v. State*, 2001 OK CR 28, ¶ 4, 34 P.3d 148, 149. We do so again today.

Accordingly, this appeal is denied.

## DECISION

The Judgment and Sentence is **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2013), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE KURT GLASSCO, DISTRICT JUDGE

**APPEARANCES AT TRIAL**

GLEN DRESBACK
ASSISTANT PUBLIC DEFENDER
TULSA COUNTY PUBLIC DEFENDER'S
    OFFICE
423 S. BOULDER AVE.
TULSA, OK 74103
COUNSEL FOR APPELLANT


TIM HARRIS
DISTRICT ATTORNEY
GARY DAVIS
ASSISTANT DISTRICT ATTORNEY
500 SOUTH DENVER
TULSA, OK 74103
COUNSEL FOR THE STATE

**APPEARANCES ON APPEAL**

STUART W. SOUTHERLAND
ASSISTANT PUBLIC DEFENDER
TULSA COUNTY PUBLIC
    DEFENDER'S OFFICE
423 S. BOULDER AVE., STE. 300
TULSA, OK 74103
COUNSEL FOR APPELLANT


E. SCOTT PRUITT
ATTORNEY GENERAL OF
    OKLAHOMA
SETH BRANHAM
ASSISTANT ATTORNEY GENERAL
313 N.E. 21ST ST.
OKLAHOMA CITY, OK 73105
COUNSEL FOR THE STATE

**OPINION BY: LUMPKIN, J.**
LEWIS, P.J.:  Concur in Results
SMITH, V.P.J.:  Concur in Results
C. JOHNSON, J.:  Concur in Results
A. JOHNSON, J.:  Concur


RA

9

FILED
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

JAN 2 1 2014

# IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

MICHAEL S. RICHIE
CLERK

MICHAEL BRANDON KIRBY, )
)
      Appellant, )
)
v. )
)
THE STATE OF OKLAHOMA, )
)
      Appellee. )

**Not For Publication**

**Case No. F-2012-813**

## SUMMARY OPINION

**LUMPKIN, JUDGE:**

Appellant, Michael Brandon Kirby, was tried by jury and convicted of Domestic Assault and Battery by Strangulation (21 O.S.2011, § 644(J)), After Former Conviction of Two or More Felonies, in the District Court of Tulsa County, Case Number CF-2012-369. The jury recommended as punishment imprisonment for twenty years. The trial court sentenced accordingly and ordered Appellant to pay costs, including a $2,500.00 assessment for the costs of representation. It is from this judgment and sentence that Appellant appeals.

Appellant raises the following propositions of error in support of this appeal:

I.    The jury was instructed on the incorrect range of punishment, and Appellant's sentence was improperly enhanced pursuant to 21 O.S.2011, § 51.1(C).

II.    Under the facts presented, it was error to permit the domestic violence expert to testify regarding domestic violence issues which were not shown to be relevant in this case. The presentation of the evidence resulted in undue prejudice and deprived Appellant of his


EXHIBIT
C

right to a fair trial under the Fourteenth Amendment to the United States Constitution.

III.    The $2,500.00 attorney fee assessed by the district court was unauthorized by law and must be vacated.

After thorough consideration of these propositions and the entire record before us on appeal including the original record, transcripts and briefs of the parties, we have determined that neither reversal nor modification of sentence is warranted under the law and the evidence.

As to Proposition One, we find that the trial court did not abuse its discretion when it instructed the jury concerning the range of punishment. *Eizember v. State*, 2007 OK CR 29, ¶ 111, 164 P.3d 208, 236; *Cipriano v. State*, 2001 OK CR 25, ¶ 14, 32 P.3d 869, 873. Applying the rules of statutory construction, we find that the offense of domestic assault and battery by strangulation, as set out in 21 O.S.2011, § 644(J), is enhanceable pursuant to the Habitual Offender Statute found at 21 O.S.2011, § 51.1. *State v. Young*, 1999 OK CR 14, ¶ 27, 989 P.2d 949, 955; *Mitchell v. State*, 1987 OK CR 13, ¶ 11, 733 P.2d 412, 415. As Appellant's former felony convictions were not for the offense of domestic abuse by strangulation then the specific enhancement provision of § 644(J) was not triggered and the State could seek to enhance Appellant's punishment pursuant to § 51.1. *Ellis v. State*, 1988 OK CR 9, ¶ 5, 749 P.2d 114, 116 (holding that specific enhancement statutes, where applicable, control over general enhancement statutes but the general enhancement statute applies when the provisions of the specific enhancement statute have not been triggered); *Chambers v. State*, 1988 OK CR 255, ¶ 13,

2

764 P.2d 536, 538; *Novey v. State*, 1985 OK CR 142, ¶ 14, 709 P.2d 696, 699. Proposition One is denied.

As to Proposition Two, we find that the trial court did not abuse its discretion when it admitted the expert testimony concerning domestic abuse. *Cannon v. State*, 1995 OK CR 45, ¶ 33, 904 P.2d 89, 103; *See Glossip v. State*, 2007 OK CR 12, ¶ 80, 157 P.3d 143, 157. The Legislature has determined that when a party has introduced evidence of domestic abuse, the testimony of a domestic abuse expert will assist the trier of fact to understand the evidence and that expert testimony concerning the effects of domestic abuse on the beliefs, behavior and perception of the person being abused is probative concerning the issues of the case. 22 O.S.2011, § 40.7; 12 O.S.2011, § 2702; *See Horn v. State*, 2009 OK CR 7, ¶ 38, 204 P.3d 777, 786. We have similarly concluded that such testimony is admissible. *Bechtel v. State*, 1992 OK CR 55, ¶ 35, 840 P.2d 1, 11 (stating expert testimony under § 40.7 of Title 22 should be used in cases involving Battered Woman Syndrome); *See Davenport v. State*, 1991 OK CR 14, ¶¶ 15-17, 806 P.2d 655, 659-660 (allowing evidence of child accommodation syndrome to explain a victim's behavior); *see also Harris v. State*, 2004 OK CR 1, ¶¶ 35-39, 84 P.3d 731, 747-48 (holding expert testimony on domestic abuse relevant to explain a victim's behavior, as well as showing the defendant's intent).

Giving the domestic abuse expert's testimony the maximum reasonable probative force and the minimum reasonable prejudicial value, we find that the testimony's probative value was not substantially outweighed by its prejudicial

3

effect. *Davis v. State*, 2011 OK CR 29, ¶ 89, 268 P.3d 86, 113; *Williams v. State*, 2008 OK CR 19, ¶ 70, 188 P.3d 208, 223; *Mayes v. State*, 1994 OK CR 44, ¶ 77, 887 P.2d 1288, 1310. The expert's testimony held great probative value concerning Appellant's intent and, in particular, the requisite element of "with the intent to cause great bodily harm by strangulation." *Harris*, 2004 OK CR 1, ¶¶ 35-39, 84 P.3d 731, 747-48 Inst. No. 4-26(D), OUJI-CR(2d) (Supp.2013). The testimony also assisted the jury in understanding the victim's behavior following Appellant's attack on her person. *Id.* As the trial court instructed the jury not to speculate as to the reason why the victim was unavailable to testify at trial, we find that Appellant has not shown that the expert's testimony misled the jury. *Jackson v. State*, 2007 OK CR 24, ¶ 16, 163 P.3d 596, 602; *Ryder v. State*, 2004 OK CR 2, ¶ 83, 83 P.3d 856, 875, *citing Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993).

Within this proposition of error, Appellant makes reference to an alleged discovery violation. As Appellant failed to set this claim out as a separate proposition of error as required by Rule 3.5, he has waived review of the issue. *Murphy v. State*, 2012 OK CR 8, ¶ 23, 281 P.3d 1283, 1291; Rule 3.5(A)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2013). Proposition Two is denied.

As to Proposition Three, we find that Appellant failed to challenge the trial court's imposition of the $2,500.00 assessment for costs of representation and, thus, waived appellate review of this issue for all but plain error. *Hubbard*

4

*v. State*, 2002 OK CR 8, ¶ 7, 45 P.3d 96, 99; *Simpson v. State*, 1994 OK CR 40, ¶¶ 11, 23, 876 P.2d 690, 694-95, 698-99.  Reviewing Appellant's claim for plain error pursuant to the test set forth in *Hogan v. State*, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923, we find that Appellant has not shown the elements of plain error.  Neither 22 O.S.2011, § 991a(A)(1)(a) nor 22 O.S.2011, § 1355.14 are applicable to the present case.  As the trial court was authorized to impose the costs of representation assessment pursuant to 19 O.S.2011, § 138.10 and the record supports the assessment, we find that Appellant has not shown the existence of an actual error.  Plain error did not occur.  Proposition Three is denied.

**DECISION**

The judgment and sentence is **AFFIRMED.**  Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2013), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE KURT G. GLASSCO, DISTRICT JUDGE

**APPEARANCES AT TRIAL**

ANGELA BONILLA
ADAM HASELGREN
ASSISTANT PUBLIC DEFENDERS
423 S. BOULDER AVE., STE 300
TULSA, OK 74103
COUNSEL FOR DEFENDANT

**APPEARANCES ON APPEAL**

STUART W. SOUTHERLAND
ASSISTANT PUBLIC DEFENDER
423 S. BOULDER AVE., STE 300
TULSA, OK 74103
COUNSEL FOR APPELLANT

MARY WALTERS
ASSISTANT DISTRICT ATTORNEY
500 S. DENVER, STE 900
TULSA, OK 74103
COUNSEL FOR THE STATE

E. SCOTT PRUITT
ATTORNEY GENERAL OF OKLAHOMA
JENNIFER B. WELCH
ASSISTANT ATTORNEY GENERAL
313 N.E. 21ST ST.
OKLAHOMA CITY, OK  73105
COUNSEL FOR THE STATE


**OPINION BY:**      **LUMPKIN, J.**
LEWIS, P.J.:  CONCUR
SMITH, V.P.J.:  CONCUR
C. JOHNSON, J.:  CONCUR
A. JOHNSON, J.:  CONCUR


RA

6